## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-319 |
| LEONARD P. LUCHKO | : | |
| MARK C. EISTER | : | |
| VINCENT J. FUMO | | |
| RUTH ARNAO | | |

## Memorandum and Order

YOHN, J.                                                                                  June ___, 2007

The United States brings the instant motion for a protective order over discovery materials pursuant to Federal Rule of Criminal Procedure 16(d)(1), supplanting its earlier motion for a protective order. Defendants do not oppose the proposed order. Philadelphia Newspapers, LLC ("PNL") has moved to intervene in the case for the limited purpose of opposing the protective order. For the following reasons, I find that PNL does not have standing to intervene and that there is good cause for the entry of a protective order over discovery materials in this case.

### I. Background

On June 27, 2006, the grand jury returned a thirty-four-count indictment against defendants Leonard P. Luchko and Mark C. Eister charging them with conspiracy to obstruct justice and substantive counts of obstruction of justice. The government filed a motion on

August 10, 2006 for a protective order pursuant to Rule 16(d)(1) requesting the court enter a

protective order covering a limited class of documents that it intended to produce to defendants

Luchko and Eister.  Defendants Luchko and Eister initially opposed the entry of a protective

order, but the parties eventually agreed to a modified protective order to cover the documents at

issue.  In the meantime, PNL sought intervention for the limited purpose of opposing the then-

pending protective order, which was unopposed by the parties and granted by the court.  The

court then issued a memorandum and order on October 27, 2006 setting forth the applicable

standards for the entry of a protective order pursuant to Rule 16(d)(1) and requesting further

briefing by the parties given the modified nature of the proposed protective order.  The

government and PNL submitted briefs on the issue and the government also submitted *ex parte*

examples of materials over which it requested a protective order for the court's in camera review.

The court issued a temporary protective order so that the approximately 800 pages of materials

submitted could be reviewed.[1]

    After entry of the temporary protective order on December 12, 2006, the grand jury issued

a superceding indictment 267 pages in length containing 141 separate counts that added

defendants Vincent J. Fumo and Ruth Arnao, and dramatically broadened the charges.  On March

30, 2007, the government filed the instant motion for a protective order supplanting its prior

---

[1]It is appropriate for the court to conduct an in camera review of materials submitted by
the moving party in order to make a determination of good cause.  Rule 16(d)(1) specifies that
"[t]he court may permit a party to show good cause by a written statement that the court will
inspect ex parte.  If relief is granted, the court must preserve the entire text of the party's
statement under seal."  Fed. R. Crim. P. 16(d)(1).

motion.[2]  Defendants do not oppose the protective order.  PNL has filed a brief in opposition and, to the extent there is any question regarding the scope of the intervention previously granted, a request for leave to intervene for the purpose of opposing the government's new motion for a protective order.  The court held a hearing on May 14, 2007, at which counsel for the government, all defendants, and PNL were in attendance.

The government now requests a protective order similar in language but covering a far broader scope of documents consisting of all the documents it intends to produce to the four defendants pursuant to its open discovery policy.  The government avers that the discovery materials at issue are essentially all of the documents obtained during the investigation and now comprise 983 pages of 360 interview reports by investigating agents, 6,899 pages of grand jury testimony involving approximately 104 witnesses, 103 pages of search warrant applications, 240 complete boxes of documents and other materials seized from others, and the contents of approximately fifty-three computers, servers, and other electronic data storage devices, also seized from others.  The documents to which the original temporary protective order applies–983 pages of 360 interview reports by investigating agents, 6,899 pages of grand jury transcripts involving 104 witnesses, and 103 pages of search warrant applications involving two or three search warrants–have been produced on disk and are in defendants' possession.

The contents of the fifty-three computers, servers, and other electronic storage devices

---

[2]The government's proposed order would limit defense counsel to use of discovery materials produced by the government to that which is necessary in the preparation for or use at trial.  Any counsel, defendant or other person to whom disclosure is made may not disclose or display discovery materials or information to any third party, except for trial-related purposes. Defense counsel would further be required to maintain a log of every person to whom a copy of discovery materials is provided and to obtain from every such person a written statement acknowledging the protective order.

comprise hundreds of thousands of pages.  The entire computers of different individuals–containing personal and other information completely irrelevant to the investigation or the indictment–were seized.  The government has the entire contents of each of these electronic storage devices, which defendants could copy at any time in their entirety.  At the present time, defendants are permitted to inspect the contents of the electronic devices, but the government does not want to make copies of the contents available to defendants in the absence of a protective order.

The government also has approximately 240 boxes of documents and other items that were seized from one hundred plus third parties pursuant to approximately 500 grand jury subpoenas.  These boxes consist of thousands of pieces of paper, including, for instance, invoices, checks, and emails.  The government has permitted defendants to inspect these documents, but not have copies made.

At the time of the hearing, the government advised the court that the grand jury that had issued the superceding indictment had completed its work and been discharged.  The government does not contemplate any new charges against defendants; however, there could perhaps be charges against other individuals based on the information in the materials at issue, which would then be subject to further investigation.

The government seeks an umbrella protective order that would cover all the discovery materials in this case.  These materials far exceed the documents that the government would be required to disclose to defendants pursuant to its obligations under the Constitution, statutes or rules, but have been made available under the government's open discovery policy.  Regarding the classes of documents at issue, the government believes the interview notes and grand jury

4

testimony contain the most sensitive materials.  Redacting the information concerning uncharged

individuals would be a monumental burden that would take months to accomplish.  There are

140 transcripts of grand jury testimony alone, and hundreds of thousands of other documents.

In its memorandum in support of the new motion for a protective order, the government

raised several substantive arguments, to which PNL responded.  In the interim, the Third Circuit

issued a precedential decision in the case of *United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007).

The government's reply to PNL's opposition incorporates the holdings of *Wecht*.  The

government now objects to PNL's standing to intervene in this case in addition to opposing

PNL's substantive arguments in opposition to the protective order.  Pursuant to the court's order

of April 27, 2007, requesting PNL's analysis of *Wecht*, PNL filed a sur-reply to the government's

reply and the court heard oral argument at the aforementioned hearing.


## II.  Discussion

### A.  Standing

The government objects to PNL's intervention for the purpose of opposing the protective

order on the ground that PNL does not have standing.[3]  "[S]tanding is an essential and

unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The

Supreme Court has stated, it is "well settled that 'the irreducible constitutional minimum of

standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact'–an

---

[3]The fact that the government only recently raised standing is irrelevant because
"[s]tanding represents a jurisdictional requirement which remains open to review at all stages of
the litigation."  *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 255 (1994) (citation omitted).

invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *United States v. Hays*, 515 U.S. 737, 742-43 (1995) (quoting *Lujan*, 504 U.S. at 560-561).

The Third Circuit in *Wecht* reaffirmed its precedent with respect to third party standing for purposes of challenging an order that limits the dissemination of speech or information, such as a gag, protective, or confidentiality order.  The court explained that in *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834 (3d Cir. 1996), it had "noted that 'putative recipients of speech usually have standing to challenge orders silencing would-be speakers,' but that 'plaintiffs still must show that the gag orders have caused them injury in fact and that their injury is likely to be redressed by a favorable decision.'"  *Wecht*, 484 F.3d at 202 (citing *FOCUS*, 75 F.3d at 838) (stating that the party invoking federal jurisdiction bears the burden of establishing the elements of standing).  "Accordingly, . . . 'third parties have standing to challenge a gag order only when there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so.'"  *Wecht*, 484 F.3d at 202 (quoting *FOCUS*, 75 F.3d at 838-39).  The purpose of the willing speaker requirement is "to ensure that there is an injury in fact that would be redressed by a favorable decision."  *Wecht*, 484 F.3d at 203.  In other words, "the standing inquiry should focus on whether third parties would obtain the information they seek if successful on the merits of their claims."  *Id.* at 204; *see also*, *Pa. Family Inst., Inc. v. Black*, 2007 U.S. App. LEXIS 12219, at *25 (3d Cir. May 25, 2007) (stating that "reading the Supreme Court's cases together with our own, we hold that in order to

show the existence of a willing speaker for the purposes of establishing third party standing, a party must at least demonstrate that but for a regulation, a speaker subject to it would be willing to speak").  Thus, the desire to challenge the court's determination of good cause alone is not sufficient to convey standing.

The Third Circuit has made clear in *Wecht* and *FOCUS*, and most recently in *Pennsylvania Family Institute*, that the third party must be able to demonstrate at least some ability to access a willing speaker or a tangible document should the order be lifted or not imposed at all.  In *Wecht*, the newspapers were allowed to intervene because, despite both parties' acquiescence to the order limiting speech, it was undisputed that the defendant's attorneys were willing to speak about the case.  484 F.3d at 203.  In *FOCUS*, the court allowed third party standing where the intervenor had shown that one of the parties was "at least [] willing to talk at some point prior to the entry of the gag orders," as evidenced by the party's recently released book detailing their experience in the case.  75 F.3d at 839.  The court in *FOCUS* also described how this inquiry was consistent in other cases:

> In *Pansy* [*v. Borough of Stroudsburg*, 23 F.3d 835 (3d Cir. 1994)], for example, we employed an "available material" approach when we inquired into the practical effect of vacating the order of confidentiality at issue in that case; we noted that the plaintiff newspapers "had an interest in vacating the Order of Confidentiality" because they then could obtain the required information through Pennsylvania's Right to Know Act. 23 F.3d at 784.[4]  Similarly, in *United States v. Cianfrani*, 573 F.2d 835, 845 (3d Cir. 1978), we held that the intervening newsgathering organizations and reporters had standing to challenge the district court's order excluding the public from a pretrial suppression hearing and sealing the record of that hearing.  There, speech was in fact going on and was thus "available," but the challenged order denied the intervenors the right to receive it.

---

[4]Thus, in *Pansy*, the newspapers' ability to acquire the document were the protective order lifted was dispositive of the standing inquiry.

75 F.3d at 839.  In *Pennsylvania Family Institute*, the plaintiff challenged certain provisions of Pennsylvania's Code of Judicial Conduct and Rules Governing Standards of Conduct of Magisterial District Justices asserting that those provisions unconstitutionally prevented judicial candidates from completing the plaintiff's questionnaire.  2007 U.S. App. LEXIS 12219, at *2.  The Third Circuit affirmed the district court's denial of standing because the plaintiff had failed to demonstrate that the provisions "played any causal role in candidates' choice to 'decline to answer,'" unlike other cases where "the judicial candidates sent in affirmative responses that clearly demonstrated that they would not respond because of the relevant canons."  *Id.* at *25.

Accordingly, PNL is required to demonstrate some ability to obtain the documents in question or a willing speaker in order to intervene properly as a third party.  Not surprisingly, it is the government's position that PNL is unable to do so.  The government asserts that after entry of the umbrella protective order, if any party wishes to disclose discovery materials, he or she may then seek permission and the burden would remain with the government to justify protection of the particular item or items.  At that time, PNL would have standing to seek to take advantage of that "willing speaker."

PNL argues that it is merely required to show that the protective order would be an "obstacle" to its receipt of the speech or materials in question.[5]  Moreover, PNL points out that the government itself believes that the leaking of information in this case is a virtual certainty, thereby demonstrating that it is likely to come into possession of the information.  PNL asserts

---

[5]PNL conceded that it is not claiming a public right of access or relying on the First Amendment to argue it is entitled to the materials at issue.  Nor does it argue that any Freedom of Information or Right to Know Act is relevant here.

that it does not have to put forth actual evidence of a willing speaker.  I disagree.

While *Pansy* certainly states that the court "need only find that the Order of Confidentiality being challenged presents an *obstacle* to the Newspapers' attempt to obtain access," 23 F.3d at 777 (emphasis added), the "obstacle" language is, as the government points out, "plucked" out of *Pansy*.  The *Pansy* court went on to note that the appellants in that case had made their showing because the Confidentiality Order "interferes with their attempt to obtain access . . . either under the right of access doctrine or pursuant to the Pennsylvania Right to Know Act."  *Id*.  Thus, the protective order being an "obstacle" alone, without some demonstrated potential means to obtain the documents in question, is insufficient to confer standing.

As described above, in *Pansy*, the court identified specific means by which the newspapers could be entitled to the documents at issue.  *Id*.  PNL's assertion that the government fears that information will be leaked in this case is insufficient to meet this standard.  Moreover, defendants and their counsel previously stated that they had no objection to the protective order, and counsel for the four defendants attended the argument on May 14, 2007, and none stated an objection to the proposed order; thus, they are not restrained speakers.  In both *Wecht* and *FOCUS*, the court identified particular persons who would be likely to "speak more freely if the order [were] lifted or modified."  *Wecht*, 484 F.3d at 203.  In *Wecht*, it was "undisputed that Wecht's attorneys [were] willing to speak about the case."  *Id.*  In *FOCUS*, the court found that "it was reasonable to infer that [plaintiffs in the state court action were] willing but restrained speakers who dare not challenge the gag orders," given that they "at least were willing to talk at some point prior to the entry of the gag orders," and "recently released a book detailing their

experiences." 75 F.3d at 839.  In *Pennsylvania Family Institute*, standing was denied because the plaintiff did "not even offer a potential willing speaker whose allegations of chill could be examined for any specific or objective harm," 2007 U.S. App. LEXIS 12219, at *23, and the Third Circuit refused to "infer the existence" of a statement by a judicial candidate "indicating that he or she was otherwise willing–and yet declined to speak," *id.* at *31.  These cases demonstrate that although it need not be a certainty that the intervenor will receive the sought-after information, mere speculation is not enough.[6]  Thus, without providing evidence of some means of obtaining the documents in question, PNL does not have standing to intervene. Therefore, its motion to intervene is denied.[7]

## B. Good Cause

Rule 16(d)(1) provides that "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1).  The

---

[6]PNL also argues that in the context of protective orders, "the Third Circuit has routinely assumed standing without analysis," and cites two cases regarding protective orders–*Arnold v. Pennsylvania*, 477 F.3d 105, 106-13 (3d Cir. 2007) and *Shingara v. Skiles*, 420 F.3d 301, 303-05 & n.3 (3d Cir. 2005).  (PNL's sur-reply 4 n.2.)  This argument is not persuasive.  The court has an obligation to address the merits of standing in order to satisfy itself that the requirements of Article III have been met.  While not speculating under what circumstances a standing discussion was deemed unnecessary in those cases, I pause to note that the intervenor in *Shingara* had the potential means to obtain the documents at issue as the plaintiff's counsel gave discovery documents to the media, which is what prompted the defendants to seek a protective order.  *See*, 420 F. 3d at 304.  In *Arnold*, the whistle blower plaintiff potentially could have turned over information to the newspaper, and the newspaper had at least an arguable contention that it could access the documents via the Pennsylvania Right to Know Act.  I cannot draw such a broad inference as PNL would have from the absence of a standing discussion in either of these two cases.

[7]This denial is without prejudice to the right of PNL at some later time to produce a willing speaker if someone to whom discovery is to be provided desires to share such information or documents with PNL.

Supreme Court has sanctioned the use of protective orders, directing that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969). However, the Third Circuit has cautioned that "simply because courts have the power to grant orders of confidentiality does not mean that such orders may be granted arbitrarily." *Pansy*, 23 F.3d at 785. The court further noted, "[d]isturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing pubic interests which are sacrificed by the orders." *Id.*

The *Pansy* framework for assessing the existence of good cause applies to the government's request for a protective order over all discovery materials in this case.[8] The Third Circuit in *Wecht* applied *Pansy* to the determination of good cause under Rule 16(d)(1) "irrespective of whether the public has a First Amendment or common law right to the materials," *Wecht*, 484 F.3d at 212, summarizing the relevant standard as follows:

> Courts may issue protective orders "for good cause" under Rule 16 of the Federal Rules of Criminal Procedure. *See also Pansy*, 23 F.3d at 786 (noting in the civil context that "it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection") (quoting Fed. R. Civ. P. 26(c)). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support

---

[8]Contrary to its initial memorandum in support of its renewed motion for a protective order, the government now admits in its reply that *Pansy* applies to a determination of "good cause" under Rule 16(d)(1). This is because the Third Circuit in *Wecht* applied *Pansy* to the determination of good cause over discovery materials in a criminal case pursuant to Rule 16(d)(1). *Wecht*, 484 F.3d at 211.

a good cause showing." *Id*. (citation and internal quotation marks omitted). The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause. *Id*. at 787-91.

*Wecht*, 484 F.3d at 211. *Pansy* directs the district court to take into account the following non-exhaustive factors:

> 1) whether disclosure will violate any privacy interests;
>
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> 3) whether disclosure of the information will cause a party embarrassment;
>
> 4) whether confidentiality is being sought over information important to public health and safety;
>
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
>
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
>
> 7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787-91). *Pansy* also requires the court to consider the protective order's "effect on disclosure of government records to the public under state and federal freedom of information laws." 23 F.3d at 791.

The *Wecht* court clarified that, "[a]lthough the party seeking to prevent disclosure bears the burden of demonstrating good cause, the balancing does not include the 'strong presumption' in favor of access that occurs upon a finding of a common law right." 484 F.3d at 212; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (stating that "restraints placed on

12

discovered, but not yet admitted, information are not a restriction on a traditionally public source of information"); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986) (stating that "discovery . . . which is ordinarily conducted in private, stands on a different footing than does a motion filed by a party seeking action by the court").[9] The *Wecht* court went on to cite *United States v. Anderson,* 799 F.2d 1438, 1441 (11th Cir.1986) for the proposition that "[d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *Wecht*, 484 F.3d at 209.

The government argues that there are several reasons that compel the issuance of a protective order including, to assure all parties a fair trial, to assure the parties their right to a speedy trial, to promote the government's salutary production of open access to its investigatory

_____

[9]Discovery materials are distinct from materials to which the common law right of access attaches:

> In general, the common law right attaches to any document that is considered a "judicial record," which "depends on whether [the] document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." [*Goldstein v. Forbes*, 260 F.3d 183, 192 (3d Cir. 2001)]; *see also United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984) ("The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents. It includes transcripts, evidence, pleadings, and other materials submitted by litigants . . . .") (citation and internal quotation marks omitted).

*Wech*t, 484 F.3d at 208. This dichotomy between discovery materials and judicial records persists with respect to materials filed in connection with discovery-related motions. The *Wecht* court reaffirmed the principles of *Leucadia, Inc. v. Applied Extrusion Technologies, Inc*., 998 F.2d 157 (3d Cir. 1993), stating that "'there is a presumptive [common law] right to public access to all material filed in connection with nondiscovery pretrial motions, whether these motions are case dispositive or not, but no such right as to discovery motions and their supporting documents.'" *Wecht*, 484 F.3d at 209 (quoting *Leucadia*, 998 F.2d at 165).

13

files for defendants, to maintain the secrecy of materials pertinent to ongoing grand jury investigations, and to protect the privacy or uncharged third parties.  The government asserts that materials already submitted to the court for in camera review are sufficient to meet a threshold showing of good cause in order to justify the entry of an umbrella protective order and that only where the matter is not complex is the district court required to engage in document-by-document review of all the materials.[10]  Accordingly, as directed by *Wecht*, the court will undertake a balancing of the *Pansy*-mandated factors and additional factors raised by the government.

As to the first factor, the *Pansy* court explained that "[i]t is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection."  23 F.3d at 787.  However, the court admonished that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny."  *Id.* (citing *United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir. 1985)).  In this case, significant privacy interests are at stake.  While three of the defendants and some of the persons involved in these discovery materials are certainly public officials for whom privacy interests are diminished, many of the persons referenced or who testified before the grand jury, or from whom computers or boxes of materials were seized, are private persons who have personal privacy interests.  Moreover, there are documents and

---

[10]While I have concluded that PNL does not have standing in this case, in the interest of thoroughness, I will note PNL's arguments.  PNL argues that the government has not made a particularized showing under *Pansy* and has ignored the factors that *Pansy* specifically addressed.  PNL argues that the justifications given by the government apply generally to all criminal cases and would render the good cause requirement meaningless.  Further, PNL asserts that the government has ignored the strong public interests at issue in this case.

information pertaining to public officials and employees that are wholly unrelated to their duties or obligations as public officials, the investigation, or the charges against defendants. *Cf. Seattle Times*, 467 U.S. at 33 ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action."). For instance, the computers and electronic devices were seized *in toto* and thus contain information and documents that are personal and/or irrelevant to the criminal proceeding. The grand jury transcripts and agent interview reports, as evidenced by the sample of 800 pages I read, contain evidence of private and embarrassing activity concerning third parties, which I find would cause "unnecessary or serious pain on parties" who I "find[] are entitled to such protection." *Pansy*, 23 F.3d at 787; *see also Haber v. Evans*, 268 F. Supp. 2d 507, 512 (E.D. Pa. 2003) (finding that non-public persons "have an even greater interest in having their identities concealed" where they were victims, witnesses and confidential informants who had "revealed [to police] most personal information in a confidential process upon assurances that their privacy would be protected"). The Supreme Court's observation in *Seattle Times* concerning the potential dissemination of private information during discovery is perhaps more compelling in a criminal case, such as here: "There is an opportunity, therefore, for litigants to obtain–incidentally or purposefully–information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." 467 U.S. at 35. Indeed, some questions asked of grand jury witnesses caused them to speculate or guess as to the motive or other states of mind of other persons, answers that would never be permitted in a court. Finally, because the government has given defendants such wide access to its files, well beyond any legal requirements, the government has

15

a legitimate concern in protecting its investigatory tactics from wide dissemination.  As such, this factor weighs very heavily in favor of the entry of a protective order.

The second factor be examined is whether the information is sought for a legitimate purpose.  There is no evidence that PNL seeks access to the information for an improper purpose. *See Shingara*, 420 F.3d at 307 (concluding that there was no evidence that newspaper sought information for an improper purpose); *United States v. White*, 2004 U.S. Dist. LEXIS 21342, at *14 (E.D. Pa. Sept. 22, 2004) (stating with regard to the second factor that "news gathering of matters of public interest is obviously legitimate").  Thus, this factor weighs against a protective order.

The third factor to be considered is whether disclosure will cause embarrassment.  In *Pansy*, the Third Circuit recognized that "[w]hile preventing embarrassment may be a factor satisfying the 'good cause' standard, 'an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.'"  23 F.3d at 787 (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).  As described with respect to the first factor, I find that the information contained in the discovery materials has the potential to cause embarrassment that is "particularly serious."  *Pansy*, 23 F.3d at 787.  While much of the information relates to individuals who are public officials or who are defendants who will suffer a ceratin amount of embarrassment simply by virtue of being named as defendants in a high profile case, there is highly embarrassing information that is irrelevant to the investigation and that relates to third parties.  Thus, this factor weighs heavily in favor of a protective order.

The fourth factor–whether confidentiality is being sought over information important to

16

public health and safety–is neutral.

The fifth factor to be considered is whether the sharing of information among litigants will promote fairness and efficiency.  This factor militates in favor of a protective order.  The information over which the government seeks a protective order consists of discovery materials intended for defendants to use in preparing for their defense.  The government has permitted completely open access to its investigatory files, rather than complying with its narrow discovery obligations required by law.  The entry of a protective order in this instance will actually make easier the sharing of information between defendants and the government because it will permit defendants, rather than the government, to sift through the materials to determine what is or is not relevant to their defense.  Moreover, redacting information concerning uncharged individuals alone would be an enormous, if not impossible, task that would take months to accomplish, thereby further delaying trial.  The court would need to give notice to these uncharged persons so they could attend a hearing to protect their interests and to review the probably hundreds of thousands of pages of documents to make a particularized decision as to each document.  Thus, this factor also weighs very heavily in favor of granting a protective order.

The sixth factor is whether the party benefitting from the order is a public entity or official.  It is the government, a public entity, which seeks the protective order.  Other beneficiaries are both public officials–such as defendants–and non-public officials who are described in the materials, whose documents or computers were seized, or who gave testimony before the grand jury. *See Arnold v. Pennsylvania*, 477 F.3d 105, 112 (3d Cir. 2007) (examining whether persons described in documents at issue were public officials).  Thus, because the potential beneficiaries are public entities and officials both as litigants and involved in the

17

materials, but also private persons who have a right to confidentiality, this factor is in equipoise.

The seventh factor to be considered is whether the case involves issues important to the public.  The *Pansy* court advised that if the documents "involve[] issues or parties of a public nature, and involve[] matters of a legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality."  28 F.3d at 788 (citations omitted).  This case involves a protracted investigation by the government into the alleged corruption and obstruction of justice by public employees.  Clearly, the public has a weighty interest in these issues.

However, the public does not have an interest in unsubstantiated or irrelevant information contained in the materials.  *Cf. Haber*, 268 F. Supp. 2d at 511-12 (finding that the public did not have an interest in claims against police officers contained in a report that had already been determined to be unsubstantiated).  For instance, agents' interview reports often contain the personal reflections and opinions of the interviewing agents.  Moreover, the public has an interest in preserving the confidentiality of investigatory processes so as not to chill such candor in the future.  *See McKenna v. City of Philadelphia*, 2000 U.S. Dist. LEXIS 15735, at **6-8 (E. D. Pa. Sept. 29, 2000) (finding that the public has a "wide-reaching interest in maintaining the confidentiality of . . . documents that involve[] . . . people who provide information to investigators and [in] protecting the integrity of the investigative process, itself").[11]  Thus, this

---

[11]The secrecy of grand jury proceedings is long-established policy.  *United States v. Procter & Gamble, Co.*, 356 U.S. 677, 681 (1958); *United States v. Rose*, 215 F.2d 617, 628 (3d Cir. 1954) ("Grand Jury proceedings are traditionally secret.").  This also counsels against the unnecessary disclosure of such materials.  I also note that the imposition of a protective order over grand jury transcripts pursuant to Rule 16(d)(1) does not conflict with Federal Rule of Criminal Procedure 6(e) relating to the secrecy of grand jury proceedings.  Rule 6(e)(2)(A)

factor cuts both ways, but on balance favors the protective order.

The government also posits as an additional factor it contends weighs in favor of the entry of a protective order that such an order is necessary to avoid prejudicial pretrial publicity.  While I agree that "the purposeful disclosure of pretrial discovery materials to the media could have a detrimental effect on achieving a fair trial for all parties," *White*, 2004 U.S. Dist. LEXIS 21342, at *16, I do not believe that a protective order is necessary for the selection of an impartial jury.  The Third Circuit has stated specifically that "the concern that the disclosure of discovery materials to the media could unduly prejudice the public is exactly the type of broad, unsubstantiated allegation of harm that does not support a showing of good cause." *Shingara*, 420 F.3d at 307.

After balancing all of the relevant factors, I find that there is good cause for granting a protective order pursuant to Rule 16(d)(1).  While this case clearly involves issues of significant interest to the public, these factors are outweighed by the serious privacy and embarrassment concerns with respect to the materials at issue.  The protective order protects the privacy interests of uncharged persons, promotes the government's policy of open discovery and prevents unnecessary disclosure of investigative techniques.  Moreover, at this stage of the litigation, the public has no right of access to the materials in question, thus there is no "strong presumption" in favor of access.  *Wecht*, 484 F.3d at 212.  Additionally, I proposed, and the government agreed,

---

prohibits the imposition of secrecy on any person except in accordance with Rule 6(e)(2)(B), which does not include defendants or defense counsel.  Fed. R. Crim. P. 6(e)(2)(A), (e)(2)(B).  However, the court's protective order does not conflict with this rule because the order does not prohibit those not under an obligation of secrecy–such as witnesses who testified before the grand jury–from sharing with others the substance of their testimony.  Rather, the protective order only prohibits the dissemination of materials provided by the government to defendants in accordance with its open discovery policy, to which defendants and their counsel do not object.

that should the protective order be issued, the government will compile a list of proposed trial exhibits well before the trial date of February 25, 2008, and those documents would then not be subject to the protective order thereby alleviating concerns that materials of significant public interest would remain confidential.[12]  As discussed above, the public does not have an interest in materials that are personal and irrelevant to the investigation or charges brought.  The public does, however, have a strong interest in maintaining the confidentiality of criminal investigations, including grand jury testimony.  Accordingly, I find good cause for the granting of the government's motion for a protective order.

## C. Umbrella Protective Order

The government has requested a protective order to cover all of the discovery materials it intends to produce to defendants.  In *Cipollone*, the Third Circuit commended the use of umbrella protective orders in appropriate situations:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head.  That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected.  It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold claim by one party (the movant) of good cause.  Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential.  After delivered under this umbrella order, the opposing party could indicate precisely which documents it believed not to be confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents.  The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain

---

[12]The common law right of access will attach to these materials once they are introduced at trial.  *See supra* note 9.  Thus, the government has agreed to advance the timetables for the compilation of these documents.

documents would shift to the other party.

785 F.2d at 1122 (internal footnote omitted); *see also*, *Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000) ("[I]n appropriate circumstances, a district court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection."); *Pansy*, 23 F.3d at 787 (citing *Cipollone*, 785 F.2d at 1122 and stating that "because of the benefits of umbrella protective orders in cases involving large-scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good cause"). In *Wecht*, the Third Circuit also reaffirmed this precedent from *Cipollone*. 484 F.3d at 211 (citing *Cipollone*, 785 F.2d at 1122). "Nevertheless . . . there may be cases in which the document-by-document approach will be preferable" to the issuance of an umbrella protective order. *Shingara*, 420 F.3d at 308 (quoting *Cipollone*, 785 F.2d at 1123).

Given the large-scale nature of the discovery involved in this case and the attendant monumental burden on the government involved in reviewing and making redaction decisions with respect to all of these documents, an umbrella protective order is appropriate. *See Cipollone*, 785 F.2d at 1122-23 (stating that "the umbrella order approach has several advantages over the document-by-document method adopted by the district court in a complex case and . . . caselaw also supports the view that the use of umbrella orders in the district court is a useful method of dealing with large-scale discovery"); *see also Shingara*, 420 F.3d at 308 (reversing grant of protective order where the "action is neither complex nor involves large-scale discovery"). I have reviewed a portion of the documents at issue and find, for all the reasons stated above, that the government has made a threshold showing of good cause as required for the requested protective order. No reasonable person can dispute that this case is a "complex

case" and that it involves "large -scale discovery."  In addition, the concerns about the widespread nature of the order are alleviated by the fact that all materials the government intends to use at trial will not be subject to the protective order, in advance of trial.  Accordingly, I will grant the government's motion for a protective order over all discovery materials it intends to produce to defendants.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                              |   |                  |
|------------------------------|---|------------------|
| UNITED STATES OF AMERICA     | : |                  |
|                              | : | CRIMINAL ACTION  |
| v.                           | : |                  |
|                              | : | NO. 06-319       |
| LEONARD P. LUCHKO            | : |                  |
| MARK C. EISTER               | : |                  |
| VINCENT J. FUMO              | : |                  |
| RUTH ARNAO                   | : |                  |

## Order

And now, this _____ day of June 2007, upon consideration of the government's renewed motion for a protective order (Doc. No. 80), Philadelphia Newspapers, LLC's response, the government's reply, and Philadelphia Newspapers, LLC's sur-reply, and after hearing,  IT IS HEREBY ORDERED that:

(1) Philadelphia Newspapers LLC's motion to intervene is DENIED without prejudice;

(2) The government's motion for a protective order is GRANTED;

(3) Pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure defense counsel may make such use of discovery materials produced by the government in this case as is necessary to prepare for trial and for use at trial, including the disclosure of the material to the defendants and other persons assisting counsel in preparing for and conducting the trial.  Any counsel, defendant, or other person to whom disclosure is made pursuant to this paragraph may not use the discovery materials for any purpose other than preparation for or use at trial and may not disclose or display the discovery materials or information contained in the discovery materials to any third party, except as required to prepare for trial or for use at trial.

Defense counsel shall maintain a log of every person to whom a copy of discovery materials is provided for the purpose of preparation for or use at trial, and shall obtain from every such person at the time of production of the copy the following written statement:

> I acknowledge that discovery materials have been provided to me for the purpose of assisting _____ in preparing for and/or using such materials at the trial of *United States v. Fumo, et al.* (Criminal No. 06-319). I have read the Order of the Court dated June 6, 2007 permitting such disclosure to me, and agree as directed in the Order that I will use the discovery materials only in preparation for or use at trial of the defendants, and will not otherwise disclose or display the discovery materials or information contained in the discovery materials to any third party. I acknowledge that a violation of the Court's Order may result in penalties for contempt of court.

(4) The government shall compile a list of trial exhibits by December 1, 2007, which documents will not be subject to the protective order, absent a further motion and hearing.

(5) The government's prior motion for a protective order (Doc. No. 20) is dismissed as moot.

_____ s/ William H. Yohn Jr. _____
William H. Yohn Jr., Judge