# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-319 |
| VINCENT J. FUMO, | : | |
| Defendant. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                    October ___, 2007

Presently before the court is a motion filed pursuant to Federal Rule of Criminal Procedure 12(b) by Pennsylvania State Senator Vincent J. Fumo to dismiss various counts of the superseding indictment.

A superseding indictment ("the indictment") was filed on February 6, 2007, charging defendants Fumo, Ruth Arnao, Leonard Luchko, and Mark Eister.  Senator Fumo was charged in connection with four categories of wrongdoing:  (1) fraud and conspiracy to commit fraud related to the Senate of Pennsylvania ("Senate"); (2) fraud and conspiracy to commit fraud, conspiracy to obstruct the Internal Revenue Service ("IRS"), and aiding and assisting in the filing of false tax returns related to Citizens Alliance for Better Neighborhoods ("Citizens Alliance"); (3) fraud related to the Independence Seaport Museum; and (4) obstruction of justice and conspiracy to obstruct justice.

Senator Fumo seeks dismissal of Counts 1 through 64, which allege mail and wire fraud and conspiracy to commit mail and wire fraud on the Senate, because of federalism and separation of powers concerns, as well as for failure to sufficiently charge the offenses.  He seeks

dismissal of Counts 65 through 98, which allege mail and wire fraud and conspiracy to commit mail and wire fraud on Citizens Alliance, for failure to sufficiently charge the offenses.  He seeks dismissal of Counts 101 and 103 for failure to sufficiently charge a violation of Internal Revenue Code § 7602(2).  Finally, he seeks dismissal of the obstruction of justice charges based on 18 U.S.C. § 1519—Counts 109, 112, 114-15, 118, 120-21, 124-25, 127, 129-31, and 133-34—on the ground that § 1519 is unconstitutional.[1]  For the reasons described herein, the motion will be denied as to all counts.

I.      **Standard**

A motion to dismiss under Federal Rule of Criminal Procedure 12(b)(3)(B) tests the sufficiency of an indictment.  An indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "An indictment is sufficient if it:  1) 'contains the elements of the offense intended to be charged,' 2) 'sufficiently apprises the defendant of what he must be prepared to meet,' and 3) allows the defendant to 'show[] with accuracy to what extent he may plead a former acquittal or conviction' in the event of a subsequent prosecution."  *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.

---

[1] Senator Fumo's codefendants Eister, Luchko, and Arnao each filed a motion asking to join in Senator Fumo's motion to dismiss to the extent his motion is applicable them.  Those motions were granted on August 24, 2007.  Eister and Luchko are charged only with obstruction of justice:  Eister is charged along with Senator Fumo for violating the contested statute in Counts 109, 114, and 118; Luchko is charged with violating the statute in Counts 109, 112, 115, 120-21, 124-25, 127, 129-31, and 133-34.  Arnao is charged with mail and wire fraud, and with conspiracy to commit mail and wire fraud, on Citizens Alliance.  She is also charged, in Counts 109, 121, 124, 127, 129, and 134, with violating the contested obstruction of justice statute.  Neither Eister, Luchko, nor Arnao filed a brief setting forth additional arguments; this opinion is thus confined to the issues raised by Senator Fumo with respect to the charges against him.

1989) (quoting *Russell v. United States*, 369 U.S. 749, 76364 (1962)).  The indictment is "generally sufficient" when it "set[s] forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"  *Hamling v. United States*, 418 U.S. 87, 116 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).  The court must take each count (including paragraphs incorporated from other counts) "as a whole," read it "reasonably," and give it "fair construction," but may not ignore the "precise manner" in which it is drawn.  *United States v. Schramm*, 75 F.3d 156, 162 (3d Cir. 1996).

In evaluating an indictment, the court must "accept[] as true the factual allegations set forth in the indictment."  *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).  The defendant may not use the motion to dismiss to challenge the sufficiency of the government's evidence, but only to challenge the legal sufficiency of the government's allegations.  *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir.2000).  "The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29."  *Id.* at 661.

## II.     Counts 1-64:  Mail and Wire Fraud on the Senate

Senator Fumo was elected to the Senate in 1978 to represent the First Senatorial District, which includes areas of Philadelphia.  In 1985, he became the chairman of the Senate Democratic Appropriations Committee.  He has maintained Senate offices in Philadelphia and Harrisburg; at times he had over ninety Senate employees.  (Ind. 1.)

The indictment asserts that "Senators were prohibited from using Senate employees,

during their compensated work hours, to serve the personal needs of a Senator, or to assist a political campaign for public office."  Further, "Senators were . . . prohibited from requiring, as a condition of their employment, that Senate employees perform such tasks on behalf of a Senator after working hours."  (Ind. 2.)

Notwithstanding these and other constraints on expenditure of Senate resources, the indictment alleges that Senator Fumo "systematically, routinely, and improperly used the funds and resources of the Senate for his personal and political benefit" by directing that Senate employees and contractors perform personal and political tasks for himself, family members, and friends.  (Ind. 4-6.)  Some employees allegedly did solely personal and political work for him.  (Ind. 8.)  The indictment also alleges that Senator Fumo "overpa[id] employees who did both official and personal tasks" and ignored pay classifications "in compensating certain employees on his staff."  (Ind. 8.)  He allegedly "abused his authority to use Senate funds to hire 'contractors' for legislative-related tasks" by using the contractors for personal and political tasks.  (Ind. 9.)  In so doing, the indictment alleges, Senator Fumo "extensively used the United States mail, commercial interstate carriers . . . , and interstate wire communications" in furtherance of a scheme to defraud the Senate.  (Ind. 9.)  This conduct allegedly caused a loss to the Senate in excess of one million dollars.  (Ind. 10.)

Senator Fumo argues that Counts 1 through 64 must be dismissed because (1) "the government seeks an unprecedented extension of the mail fraud statue into areas otherwise reserved to the states under our federal system"and the indictment is barred by the Pennsylvania Constitution's Speech or Debate Clause (Def.'s Supp. Mem. 3, 5), and (2) the government has failed to sufficiently charge the offenses of mail and wire fraud.

A.      **Federalism and Separation of Powers**

Senator Fumo argues that, in applying the federal mail and wire fraud statutes to "Senate personnel decisions," the federal government "seeks to regulate areas that go to the core of state legislative functions" as prohibited by *National League of Cities v. Usery*, 426 U.S. 833 (1976), *overruled by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985), and its progeny. (Def.'s Supp. Mem. 1.)  He also argues that "his indictment is barred by the protections of the Speech or Debate Clause.  (*Id.* at 5.)  Both arguments are unavailing, and I will not dismiss the charges on these grounds.

1.      **Federalism**

The Third Circuit has been "mindful that the prosecution of state public officials . . . raises federalism concerns about the appropriateness of the federal government's interference with the operation of state and local governments."  *United States v. Panatella*, 277 F.3d 678, 693 (2002).  In a prosecution of a Pennsylvania state senator for honest services fraud under 18 U.S.C. §§ 1343 and 1346, however, the court reasoned that "a healthy federalism involves some interposition of state and federal governments into each other's respective spheres of sovereignty," and "[i]n particular, federal prosecution of state and local public officials can play a beneficial role where state prosecutors are reluctant to bring charges against political allies or superiors."  *Id.* at 694.

The argument that *National League of Cities* and its progeny bar federal prosecution of a state senator for a scheme to defraud the Pennsylvania Senate by paying, with Senate funds, nominal Senate employees doing personal and political favors, was rejected in a previous mail

fraud prosecution in this court.  There, the defendant contended that federal prosecution "constitute[d] an impermissible intrusion into the employment practices of a [s]tate and is forbidden by the Tenth Amendment."  *United States v. Camiel*, 503 F. Supp. 769, 772 (E.D. Pa. 1980).  The district judge concluded:  "The holding of the *National League of Cities* is a limited one; certainly, it does not stand for the proposition that under no circumstances can the federal government interfere in the employer/employee relations of a state or local government."  *Id.* at 773.  The court held that *National League of Cities* "is not controlling," and "not relevant to this case."  *Id.* at 773 (citing *In re Grand Jury Proceedings (Appeal of Cianfrani)*, 563 F.2d 577, 582 (3d Cir. 1977)).

In its opinion weighing federalism concerns with respect to the prosecution of another Pennsylvania state senator, the Third Circuit concluded that *National League of Cities* did not prohibit the grand jury investigation of federal mail fraud charges.  *Appeal of Cianfrani*, 563 F.2d at 582.  Furthermore, the court found that payroll and tax evidence (which the senator argued was privileged) was "so peripheral as not to be covered by the [federal common law legislative] privilege.  The legislative function is separate and distinct from that of compensation of the office . . . ."  *Id.* at 585; *see also Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 340 (3d Cir. 2006) (holding that a state representative's decision to fire an employee, when the decision "did not eliminate [the] position, thereby affecting future employees," "did not rely on any broad consideration of policy," and was not "directed to creating a new policy," was administrative rather than legislative).

Finally, it is worth noting that the United States Supreme Court has found that "[f]ederal prosecutions of state and local officials, including state legislators . . . are not infrequent."

*United States v. Gillock*, 445 U.S. 360, 373 n.11 (1980).  For these reasons, I find that federalism concerns do not bar this prosecution.

        **2.**        **Speech or Debate Clause**

Senator Fumo argues that he is afforded immunity by the Pennsylvania Constitution's Speech or Debate Clause, art. II, § 15.  He brings to the court's attention, however, *United States v. Rayburn House Building, Room 2113*, 497 F.3d 654 (D.C. Cir. 2007), which was decided pursuant to only the U.S. Constitution's Speech or Debate Clause, art. I, § 6, cl. 1.  I will thus address the application of both clauses, concluding that neither provides Senator Fumo with immunity from prosecution of a federal crime.

First, the federal Speech or Debate Clause does not apply in the prosecution of a state legislator.[2]  By its terms, absolute immunity applies only to federal "Senators and Representatives."  *Gillock*, 445 U.S. at 366 n.5; *Appeal of Cianfrani*, 563 F.2d at 581 ("We find it significant that the constitutional phraseology is limited to members of Congress . . . .").  Moreover, "[t]he Clause is viable in a governmental setting where separation of powers is a significant factor.  That consideration does not apply when a state legislator is being prosecuted under a federal criminal statute."  *Appeal of Cianfrani*, 563 F.2d at 581.

---

[2] Article I, § 6, clause 1 of the U.S. Constitution provides:

The Senators and Representatives shall receive a compensation for their services, to be ascertained by law, and paid out of the treasury of the United States. They shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place.

The Clause similarly affords no evidentiary privilege to state legislators who are subjects of federal prosecutions.  *Gillock*, 445 U.S. at 373; *see also In re Grand Jury (Granite Purchases*), 821 F.2d 946, 948 (3d Cir. 1987) (rejecting a qualified evidentiary privilege for state legislators under the federal Speech or Debate Clause).  The issue of a qualified evidentiary privilege was again before the Third Circuit in earlier proceedings in this prosecution, and that court "[saw] no reason to revisit *Granite*."  *In re Grand Jury*, 180 Fed. Appx. 347, 348 (3d Cir. 2006).  *Rayburn House Office Building, Room 2113*, which concerned the *federal* Speech or Debate Clause as applied to a *federal* legislator, is completely inapplicable in the instant case.[3]

Second, the state Speech or Debate Clause does not apply in federal prosecutions.[4]  "The Pennsylvania Constitution contains a Speech or Debate Clause that tracks the federal clause, but it cannot shield a legislator from a violation of federal law."  *Fowler-Nash*, 469 F.3d at 332. Nevertheless, Senator Fumo cites *Stilp v. DeWeese*, No. 46 M.D. 2007 (Pa. Commw. Ct. July 31, 2007), in which the Pennsylvania Commonwealth Court relied on the separation of powers principle embodied in the Pennsylvania Constitution's Speech or Debate Clause to reject a challenge to the Pennsylvania legislature's alleged practice of paying bonuses to employees as

---

[3] The federal Speech or Debate Clause absolutely immunizes state legislators for their legislative (but not administrative) acts when subjected to *civil* suits.  *Tenney v. Brandhove*, 341 U.S. 367 (1951).  But "in protecting the independence of state legislators, *Tenney* and subsequent cases on official immunity have drawn the line at civil actions."  *Gillock*, 445 U.S. at 373.

[4] Article 2, § 15 of the Pennsylvania Constitution provides:

The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach of surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

compensation for campaign work.  The court found the civil suit to be a non-justiciable matter, as "courts may not inquire into another branch's internal operations under the Separation of Powers principle."  *Id.* at 7-8.  As noted above, however, I have found this case not to involve legislative functions, so *Stilp*, even if it were binding precedent—which it certainly is not—would not require dismissal.[5]  In fact, the *Stilp* court noted that criminal prosecution on the facts of that case would be permissible:

> Stilp . . . is not without recourse.  If he has any information that would support the misuse of taxpayer dollars, his remedy is to bring the matter to the proper authorities so they may determine if there is sufficient evidence to bring criminal charges.

*Id.* at 8.

Given that this is a *federal* prosecution of a *state* legislator for alleged improper administrative (not legislative) activity, neither federalism nor separation of powers concerns compel dismissal.

### B.    Failure to Sufficiently Charge Mail and Wire Fraud

The indictment sufficiently charges mail and wire fraud on the Senate; I will therefore deny the motion to dismiss as to Counts 1 through 64.  A conviction under the mail or wire fraud statute requires that three elements be proven:  (1) "the existence of a scheme to defraud"; (2) "the use of the mails in furtherance of the fraudulent scheme"; and (3) "culpable participation by

---

[5] *Stilp* relied on the reasoning of *Youngblood v. DeWeese*, 352 F.3d 836, 842 (3d Cir. 2004), a Third Circuit case applying the federal Speech or Debate Clause to immunize, in a *civil* suit under § 1983, state representatives' "acts of allocating the General Assembly's office-staffing appropriation among individual Representatives."  Because the instant case is a *criminal* prosecution for violation of federal statutes, *Youngblood* is thus inapplicable.

the defendant." *United States v. Pearlstein*, 576 F.2d 531, 534 (3d Cir. 1978).[6]

Senator Fumo makes three arguments in support of his motion to dismiss:  (1) the Senate was not wrongfully deprived of "money or property" because "the government is unable to show the existence of a requirement on the part of Senator Fumo to disclose how he used his employees" and Senator Fumo had complete discretion in how he paid and used his employees; (2) Senator Fumo did not use the mails and wires in furtherance of a scheme to defraud; and (3) Senator Fumo made no material misrepresentations, as "there are no allegations that Senator Fumo employed deception, deceit, artifice or trickery to hide any of the conduct alleged in the

---

[6] The mail fraud statute and the wire fraud statute are "in pari materia and are, therefore, to be given similar construction." *United States v. Tarnopol*, 561 F.2d 466, 475 (3d Cir. 1977), *abrogated on other grounds by Griffin v. United States*, 502 U.S. 46 (1991).  "[T]he cases construing the mail fraud statute are applicable to the wire fraud statute as well." *Id.*  The mail fraud statute, 18 U.S.C. § 1341, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, . . . or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

Similarly, the wire fraud statute, 18 U.S.C. § 1343, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

indictment." (Def.'s Mem. 9, 12.).

### 1.      Scheme to Deprive the Senate of Money or Property

The indictment alleges that Senator Fumo intended to obtain "money and property from the Senate." (Ind. 4, 75, 77, 82.) More specifically, Senator Fumo's "fraudulent and extensive use of Senate resources for personal and political benefit caused a loss to the Senate substantially in excess of one million dollars." (Ind. 10.) Senator Fumo allegedly did the following:

- "padded his staff . . . with superfluous employees . . . who were retained and compensated with Senate funds to serve [Senator Fumo] politically and personally, and who performed little or no legitimate Senate work" (Ind. 5);

- "used Senate staff . . . as campaign workers, during regular business hours" (Ind. 5);

- "used numerous Senate employees to attend to his many personal needs" (Ind. 5);

- "gave Senate equipment, including laptop computers, to non-Senate employees, including girlfriends, family members, his personal valet, and Senate contractors, and then delegated Senate computer aides to assist those people as well as perform their Senate duties" (Ind. 6);

- "further defrauded the Senate by overpaying employees who did both official and personal tasks" (Ind. 8);

- "ignored" the Senate's pay classification system "in compensating certain employees on his staff," as "[t]hese employees were elevated to high-level positions, even though they never did any of the tasks required for those jobs

according to Senate requirements" (Ind. 8);

- "never disclosed to the Chief Clerk that many of his employees did not do the jobs in which they were classified" and never disclosed "the extensive personal and political tasks they performed on his behalf and at his direction" (Ind. 9);

- "abused his authority to use Senate funds to hire 'contractors' for legislative-related tasks" by assigning them "personal and political missions" that were "compensated with Senate money" (Ind. 9); and

- "gave Senate contracts . . . to political consultants who assisted [Senator Fumo] in numerous political races" and "used Senate contracts to compensate two close friends who were paid Senate money . . . but who did little or no Senate work at all" (Ind. 9).

Senator Fumo argues that "the government has failed to allege that the Senate employees and contractors referenced in the . . . [i]ndictment failed to provide the legislative services for which they were paid," as "[n]either the Pennsylvania Public Official and Employee Ethics Act . . . nor the Rules of the Senate regulate work hours of Senate employees."[7]  (Def.'s Mem. 6, 7.) The government responds by pointing to the numerous charges that Fumo misused Senate

---

[7] In his reply memorandum, Senator Fumo makes the additional argument that the government has not sufficiently charged mail and wire *fraud* but has alleged only a theft of services and "theft is not fraud."  (Def.'s Reply Mem. 3.)  For this argument, Senator Fumo relies on *United States v. Jones*, 471 F.3d 478 (3d Cir. 2006).  In that case, the Third Circuit found no health care fraud, in violation of 18 U.S.C. § 1347(2), because the government "has not established, nor did it seek to establish, any type of misrepresentation by [the defendant] in connection with the delivery of, or payment for, health care benefits, items, or services."  *Id.* at 481.  Unlike Senator Fumo, the defendant in *Jones* was alleged to have pocketed cash receipts instead of depositing them, but she was not alleged to have made any false statements about the money.  In the instant case, as explained in greater detail in Part II.B.3.a., *infra*, the indictment has adequately alleged misrepresentations and material omissions.

employees during "regular business hours" (*see* Ind. 5, 10, 13, 23, 33, 46, 49).  The government

"will in fact present evidence from responsible Senate officials that the Senate imposes a 37 ½-

hour workweek, and that the particular times during which those hours are served are left to each

legislator's discretion regarding his or her own staff" and that "Fumo's employees engaged in the

prohibited activities during those work hours, as the indictment repeatedly alleges."  (Gov't

Reply Mem. 10, 11 n.4.)

The length of the Senate workweek, the amount of time devoted to Senate and non-

Senate activities, whether Senate employees and contractors fully performed the work for which

they were paid, and whether in this case Senate employees "provided both legislative functions

and devoted personal assistance" as part of a "benign existing practice" (Def.'s Mem. 7) are

questions of fact.  For purposes of this motion to dismiss, I must accept the government's

allegations as true, assuming that Senate employees and contractors were compensated with

Senate funds in exchange for performing non-Senate tasks that benefited Senator Fumo

personally and politically.[8]

The indictment has alleged that this conduct was wrongful, namely because Senator

Fumo violated state law—65 Pa. Cons. Stat. § 1103, a prohibition on conflicts of interest[9]—in

---

[8] Senator Fumo argues in his reply memorandum that the government cannot prove that
Senator Fumo's alleged conduct resulted in a "private pecuniary benefit" to Senator Fumo or his
immediate family as required to make out a violation of the Pennsylvania Ethics Act, 65 Pa. C.S.
§ 1103.  (Def.'s Reply Mem. 6-7.)  The indictment, however, alleges that Senator Fumo's
conduct violated § 1103 (Ind. 2), that Senator Fumo "regularly endeavored to gain personal
benefits and gratuities from others, including . . . the Senate" (Ind. 3), and that he "used his
Senate staff in order to maintain the lifestyle he preferred" (Ind. 5).  This is sufficient.

[9] "No public official . . . shall engage in conduct that constitutes a conflict of interest."  65
Pa. Cons. Stat. § 1103.  A conflict of interest is defined in 65 Pa. Cons. Stat. § 1102 as "[u]se by
a public official . . . of the authority of his office . . . for the private pecuniary benefit of himself,

his use of legislative employees for his personal and political benefit.  The law supports this allegation:  The Pennsylvania State Ethics Commission found a violation of the conflict of interest prohibition where a state representative's former employees testified that, "while in the employment by the Commonwealth, they participated in non-legislative activities conducted at the Harrisburg and primarily at the district office of [the representative]," including for "campaign, election, and fundraising purposes."  *In re Habay*, Order No. 1313, at 32, 36 (Pa. State Ethics Comm'n Mar. 11, 2004).  These activities took place "in [the representative's] legislative offices during normal office hours using Commonwealth equipment and supplies." *Id.* at 37.  The same conduct led to the representative's conviction for violating § 1103.  The conviction was recently upheld by the Pennsylvania Superior Court, which concluded that the representative "while a public official, knowingly and intentionally used the authority of his office to derive pecuniary gain in more than a *de minimis* fashion.  *Commonwealth v. Habay*, No. 1518 WDA 2006, 2007 WL 2966427, at *4 (Pa. Super. Ct. Oct. 10, 2007).[10]  In the current indictment, the government appropriately relies on § 1103 in support of its allegations that the Senate does not approve of this type of conduct.

A Second Circuit case confirms that using state legislative employees for non-legislative tasks, while compensating them with state money, wrongfully deprives the legislature of its

---

a member of his immediate family or a business with which he or a member of his immediate family is associated."

[10] Moreover, the Superior Court's decision in *Habay* makes clear that using state employees to perform personal and political work confers a pecuniary benefit:  "As a result of the employees conducting the aforesaid political work, [the representative] derived the benefit of a substantial number of hours of labor for which he otherwise would have needed to pay."  *Id.* at *3.

money or property.  In *United States v. Rubin*, the defendant, who was "a special counsel to the Speaker of the New York State Assembly," challenged the sufficiency of the evidence supporting a jury's verdict finding him guilty of mail fraud.  844 F.2d 979, 980 (2d Cir. 1988).  The Second Circuit found that the evidence, including the following, was sufficient:  the secretaries "regularly submitted false certifications that they were performing specified Assembly jobs"; an Assembly member "submitted certificates and vouchers affirming that [the secretaries] were providing the services called for in the designated positions"; and the secretaries spent "only 1% and 2% of their time on Assembly work."  *Id.* at 984.

Differences between the conduct described in *Habay* and *Rubin* and Senator Fumo's alleged conduct are of degree, not kind.  The proportion of time Senator Fumo's employees and contractors spent on legislative matters versus Senator Fumo's personal and political matters is a question of fact.  As the indictment contains sufficient allegations of the wrongful conduct, I will deny the motion to dismiss.[11]

## 2.      Use of Mails and Wires in Furtherance of a Scheme to Defraud

Senator Fumo argues that the mailing of paychecks and the wiring of direct deposits and electronic transfers to Senate employees who allegedly performed non-Senate work[12] were not in

___

[11] Senator Fumo's reply memorandum makes much of the necessity of proof that the Senate was deprived of money and property in a manner of which it did not approve.  (Def.'s Reply 5 (citing Gov't Reply Mem. 26).)  Whether the Senate actually approved of the alleged deprivation of money or property is a question of fact, and therefore not a determination to be made at this stage of the prosecution.

[12] Throughout the remainder of this section, I refer only to mailings.  As noted above, however, *see supra* note 6, the mail fraud and wire fraud statutes are interpreted identically.  Thus, this analysis applies to § 1343's requirement that the wires be used for the purpose of

furtherance of the alleged fraud because the mailings were not "for the purpose of executing" the alleged fraud.  The "in furtherance of" language in § 1341 encompasses both causation (focusing on "knowledge and foreseeability") and purpose (focusing on the nexus between the [mailing] and the fraud).  *United States v. Bentz*, 21 F.3d 37, 40 n.3 (3d Cir. 1994).  A defendant must "'knowingly cause' the use of the mails," and "the mailing must be 'for the purpose of executing the scheme.'" *United States v. Tiller*, 302 F.3d 98, 101 (3d Cir. 2002) (quoting *Kann v. United States*, 323 U.S. 88, 94 (1944); 18 U.S.C. § 1341).

### a.    Causation

"A defendant 'causes' the mails to be used where the defendant 'does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . .'" *Tiller*, 302 F.3d at 101 (quoting *Pereira v. United States*, 347 U.S. 1, 8-9 (1954)).  "Although a defendant must cause a mailing in furtherance of a fraud, that mailing may be incidental to the fraud, and the defendant need not personally send the mailing or even intend that it be sent." *Id.*  Instead, "[a]ll that [i]s required [i]s proof that a mailing (or other covered delivery by an interstate carrier) would have been reasonably foreseeable to an objective observer." *Id.* at 103.  The test is objective: "subjective intent or knowledge regarding the use of the mail is not required; reasonable foreseeability is sufficient." *Id.*  Senator Fumo does not contest this aspect of the mailing element.

---

executing the scheme to defraud, as well.

b.      **Purpose**

Under the purpose prong of the use-of-the-mails element, the question is whether the mailings "were 'incident to an essential part of the scheme,' or, put another way, whether the charged mailings were 'sufficiently closely related' to the scheme to bring [the defendant's] conduct within the federal mail fraud statute." *Id.* at 101-02 (internal citations omitted) (quoting *Pereira*, 347 U.S. 1, 8 (1954); *United States v. Maze*, 414 U.S. 395, 399 (1974)); *see also Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) ("To be part of the execution of the fraud . . the use of the mails need not be an essential element of the scheme.  It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" (internal citations omitted)).

Senator Fumo argues that the mailings were not sufficiently closely related because his employees would have received paychecks absent any fraud.  (Def.'s Mem. 11.)  As the government argues in reply, however, all of the Senate employees to whom the indictment refers, who did either no Senate work or considerable non-legislative work, would have received smaller checks, if any checks at all, but for Senator Fumo's alleged scheme to defraud.[13]  (Gov't

---

[13] The indictment describes how Senate employees are classified for pay purposes:

> The Senate's Chief Clerk was a nonpartisan financial professional who was charged with responsibility for administering the Senate's finances and its personnel classification and pay management plan.  In processing requests by members of the Senate to classify their Senate employees into the appropriate job classifications, the Senate's Chief Clerk expected that each member would accurately—and honestly—describe the duties of Senate employees.  However, [Senator Fumo] never disclosed to the Chief Clerk that many of his employees did not do the jobs in which they were classified, nor did [Senator Fumo] disclose the extensive personal and political tasks they performed on his behalf and at his direction.

(Ind. 8-9.)

Reply Mem. 17.)

I am in agreement with the government.  Had Senate officials known the true facts concerning the employees' work, either no checks or smaller checks would have been mailed. Furthermore, the mailed paychecks were the actual proceeds of the fraudulent scheme.  In a similar case before the D.C. Circuit, a U.S. Congressman was alleged to have "devised a scheme to defraud the United States by misapplying funds allotted for the compensation of congressional employees" and charged with mail fraud.  *United States v. Diggs*, 613 F.2d 988, 991 (D.C. Cir. 1979).  The court held, with respect to the mailing of paychecks, that "a sufficiently close nexus existed between the fraudulent scheme and the mailings of the checks.  The checks contained the actual proceeds of the fraud and thus constituted the 'lifeblood of the scheme' from the defendant's viewpoint.  Manifestly, these mailings were in furtherance of the scheme to defraud." *Id.* at 999.  For the same reason, I find that the checks mailed in the instant case were not too remote from the fraudulent scheme.

Senator Fumo relies on two categories of mailings which the Third Circuit has held not to be in furtherance of the scheme to defraud because they are not sufficiently closely related to the fraud:  "routine mailings" and mailings pursuant to a "legal duty."  (Def.'s Mem. 10-11.)  He cites *Tarnopol*, 561 F.2d at 473, which held "routine mailings" that "served the legitimate and, indeed, necessary business purpose" of the defendants were too remote to serve as the basis of a mail fraud conviction.  In *United States v. Brown*, however, the Third Circuit decided that "[w]e do not believe that *Tarnopol* created a [p]er se exception for any mailing which can be regarded as a 'routine business mailing.'"  583 F.2d 659, 667 (3d Cir. 1978).  Instead, *Tarnopol* "merely applied the already established notion that mailings which are too remote from a fraudulent

18

scheme will not support a mail fraud charge." *Id.* Thus, although the paychecks here were a routine mailing, they were not too remote from the fraud, as described above. *Tarnopol*, then, does not compel dismissal.

Senator Fumo also relies on *Parr v. United States*, 363 U.S. 370 (1960), in support of his routine mailing argument. In *Parr*, school district employees allegedly conspired to steal tax receipts mailed to the district. The Supreme Court held that the "legally compelled mailings" were not in furtherance of a scheme to defraud, in light of, among other things, the fact that "the indictment did not charge nor the proofs show that the taxes assessed and collected were in excess of the District's needs or that they were 'padded' or in any way unlawful." *Id.* at 391. Here, taking the allegations to be true, the checks mailed and payments wired were "padded," and so *Parr*'s holding does not control.

Neither does a per se legal duty exception exist. Senator Fumo finds this exception in *United States v. Cross*, 128 F.3d 145, 145-47 (3d Cir. 1997), in which court personnel had been accused of conspiring to "fix" cases and, in so doing, of using the mails (by mailing court notices) in furtherance of their conspiracy to defraud Pennsylvania citizens. The court "agree[d] that the record will support an inference that the defendants expected these notices to be dispatched by mail." *Id.* at 150. Nevertheless, the court held that because "mailing of these notices was required by law . . . *and* because any deprivation of the honest services of public employees had been completed in each instance before the notice of disposition was mailed," the mailings were not in furtherance of the conspiracy. *Id.* (emphasis added). As evidenced by the conjunctive reasoning for its holding, however, the *Cross* rule is not as inclusive as Senator Fumo implies. Here, the alleged deprivation of the Senate of its money and property could not

19

have been completed without the mailing (as noted above, the mailing contained the proceeds of the fraud), so the second part of the conjunctive holding in *Cross* is not met.

In sum, the cases Senator Fumo cites do not compel dismissal.   Most importantly, "[t]he relation of the mailing to the fraud is a question of fact." *Brown*, 583 F.2d at 668.  I am thus in agreement with the district court in *United States v. Camiel*, 503 F. Supp. at 774, which declined to dismiss Senator Fumo's prior indictment for mail fraud.  The court held:

> I would not characterize the mailings of the paychecks . . . as being remote from the alleged fraudulent scheme, i.e., the payment of salaries to employees who have never done any work.  Nevertheless, *United States v. Brown*, *supra*, states that the relation of the mailing to the fraud is a question of fact; hence, it is a matter to be determined by the jury.

Likewise, I will not dismiss the mail fraud charges in the instant case.

### 3.  Material Misrepresentations

Senator Fumo next argues that "this indictment fails to include the nature of any material misrepresentations constituting a 'fraud' under the provisions of the mail and wire fraud statutes charged in this case," as there are "no allegations that Senator Fumo employed deception, deceit, artifice or trickery to hide any of the conduct alleged."  (Def.'s Mem. 12.)  In reply, the government asserts that "every time Fumo sought compensation for his staff members and contractors, he made the implicit representation that the funds were sought for legitimate Senate purposes, and concealed the material fact that many persons were being paid wholly or in part for providing illegal personal and political assistance to him."  (Gov't Reply 23 Mem.; *see also* Ind. 8-9.)

20

###### a.        Misrepresentations and Deliberate Concealment

The indictment charges that Senator Fumo intended to "defraud the Senate" and also "to obtain money and property from the Senate by means of knowingly false and fraudulent pretenses, representations, and promises." (Ind. 4, 75, 77, 82.) The two parts of the statute (reflected in the two allegations) are read independently, *United States v. Frankel*, 721 F.2d 917, 921 (3d Cir. 1983), and neither requires actively false statements. A scheme to defraud "need not include false representations to violate the scheme or artifice clause of section 1341." *Id.* at 921. And "fraudulent representations, as the term is used in [section] 1341, may be effected by deceitful statements of half-truths or the concealment of material facts and the devising of a scheme for obtaining money or property by such statements or concealments." *United States v. Olatunji*, 872 F.2d 1161, 1167 (3d Cir. 1989) (quoting *United States v. Allen*, 554 F.2d 398, 410 (10th Cir. 1977)). For example, the Third Circuit held a defendant's deliberate concealment of his fraudulently obtained immigration status from the Department of Eduction ("D.O.E.") to be sufficient: "Only by concealing from the D.O.E. that he obtained his green card by means of false statements was [the defendant] able to obtain financial aid. The statements concealed from the D.O.E. were certainly significant with respect to ascertaining [his] eligibility." *Id.* Furthermore, there is no requirement that the government specifically allege that "such false statements were made *directly* to the ultimate victim." *Id.* at 1168.

The instant indictment's allegations meet this standard. The indictment alleges generally that Senator Fumo "never disclosed to the Chief Clerk that many of his employees did not do the jobs in which they were classified, nor did [Senator Fumo] disclose the extensive personal and political tasks they performed on his behalf and at his direction." (Ind. 8-9.) With respect to

each person Senator Fumo is alleged to have compensated with Senate funds for performing non-Senate work, the indictment provides information about the personal or political work done for Senator Fumo, as well as the person's Senate job classification or pay.  With respect to Persons No. 1, 8, 9, 16, 19, 21, 24, 25, and 26, as well as Arnao and Luchko, the indictment specifically alleges either (1) that Senator Fumo approved the employee's job title and salary increase while using the employee for personal and political work, (2) that Senator Fumo failed to disclose to the Chief Clerk that the employee was spending Senate time on non-Senate work, or (3) that Senator Fumo filed a false statement of the employees' duties with the Chief Clerk.  These are sufficient allegations of "deceitful statements of half-truths or the concealment of material facts," *Olatunji*, 872 F.2d at 1167.[14]

 With respect to the contractors Senator Fumo is alleged to have compensated with Senate money for performing personal and political tasks, the same is true.  The indictment charges generally:  "On behalf of the Senate Democratic Appropriations Committee, [Senator Fumo] entered into contracts with numerous non-Senate employees, for services which purportedly benefitted the SDAC.  In reality, [he] used many of these contractors' services for personal and political tasks.  This was fraud with respect to a substantial amount of Senate funds."  (Ind. 14.) More specifically, the indictment alleges that Senate Contractor No. 1 "spent most of his time doing . . . personal and political work assigned to him by [Senator Fumo]."  (Ind. 15.)  And, with

---

[14] The indictment contains no specific allegations of misrepresentations or deliberate concealment with respect to Persons No. 10, 15, 18, 22, and 27.  Nevertheless, the general allegation that Senator Fumo "never disclosed to the Chief Clerk that many of his employees did not do the jobs in which they were classified, nor did [Senator Fumo] disclose the extensive personal and political tasks they performed on his behalf" (Ind. 8-9), along with the descriptions of these employees' copious non-Senate work, are sufficient at this stage.

respect to Senate Contractor No. 5, "as [Senator Fumo] well knew, Senate Contractor No. 5 did little or no actual Senate work at all."  (Ind. 45.)  These allegations are sufficient to support the inference that the invoices and checks sent to and by these Senate contractors were part of a scheme to defraud based on misrepresentations to the Senate.

Senator Fumo further argues that the indictment has not alleged that he failed to disclose a conflict of interest and that, in any event, a violation of the Pennsylvania Ethics Act, 65 Pa. Cons. Stat. § 1103, which prohibits conflicts of interest, is not fraud.  I am in agreement with the government that because this indictment does not allege "honest services fraud" in violation of 18 U.S.C. § 1346, allegations that Senator Fumo failed to disclose any conflict of interest from which he received a pecuniary benefit are unnecessary.  The indictment has sufficiently alleged misrepresentations and deliberate concealment.

### b.    Materiality

Senator Fumo further argues that "no *material* misrepresentation had been alleged" because (1) legislative job classifications are advisory only and, moreover, the Senate has delegated "broad discretion" and "ultimate authority and discretion" to its members with respect to hiring and contracting, and (2) "it is not up to the federal prosecutor's office to determine what it bel[ie]ves is a legitimate legislative purpose."  (Def.'s Supp. Mem. 2.)

As to the first argument, the nature of the Senate job classifications and the extent of individual senators' discretion with respect to hiring and contracting is a disputed factual issue. Neither party has pointed to rules or regulations I can follow resolving the issue.  They contest the meaning of the grand jury testimony offered by the Senate's Chief Clerk.  (*See* Def.'s Supp.

23

Mem. 4; Gov't Supp. Mem. 12-15.)  Therefore, I will leave this issue for resolution at a later date.  Reading the indictment most favorably to the government, i.e., accepting as true that the senators were expected to accurately describe the duties of Senate employees (Ind. 8), the alleged misrepresentations made by Senator Fumo regarding his legislative employees' duties are material.

As to Senator Fumo's second argument, I concluded in Part II.A.1., *supra*, that federal prosecutors may rightly investigate the functioning of state legislators.  Because the federal government may investigate and prosecute federal crimes committed by state legislators, Senator Fumo's argument—that their inability to do so renders any misrepresentations he may have made immaterial—is unavailing.

III.    **Counts 65-98:  Mail and Wire Fraud Against Citizens Alliance**

Citizens Alliance is a nonprofit organization founded in 1991 by employees of Senator Fumo's Philadelphia office.  In 1999, it was granted tax-exempt status by the IRS.  (Ind. 87.)  Arnao, one of Senator Fumo's current codefendants (and an aide in Senator Fumo's Philadelphia district office), became the executive director in 1999.  (Ind. 90.)  The organization's purpose, contained in its articles of incorporation, is to

> promote public health, housing, safety, and education in the City and County of Philadelphia.  Such purposes shall be accomplished, in part, by contributing to the improvement, maintenance and control of appropriate sanitation and other conditions that could endanger public health and safety.  Such purposes shall be accomplished, in part, through the acquisition of real estate and/or equipment to be used in the provision of housing, the provision of educational facilities or to be used directly in the furnishing of services.  Such purposes shall be accomplished, in part, through the performance of activities which may include, but are not limited to, investigation,

research, examination, training, demonstrations and direct provisions of services.[15]

(Ind. 87-88.)  The indictment alleges that Citizens Alliance's board rarely, if ever, met before late

2003, and that Citizens Alliance's for-profit subsidiaries were not run as distinct corporate

entities.  (Ind. 90-91.)  Senator Fumo allegedly "exercised ultimate authority" with respect to

Citizens Alliance's activities.  (Ind. 91.)

The indictment also alleges that Senator Fumo, who did not have an official position at

Citizens Alliance, "used his considerable power and influence" to obtain grants and donations to

---

[15] The indictment alleges that Senator Fumo caused violations of the organization's articles of incorporation, namely by acting outside of Philadelphia (Ind. 131-42), by violating Internal Revenue Code § 501(c)(3) (Ind. 95, 120-23), and by expending funds for Senator Fumo's and Arnao's personal benefit (*see, e.g.*, Ind. 93-95).

Senator Fumo argues that (1) the articles of incorporation do not limit Citizens Alliance's activities to Philadelphia, and (2) the alleged violations of the organization's articles of incorporation cannot form the basis for a mail fraud conviction.  (Def.'s Mem. 20-21.)

Senator Fumo is correct that a nonprofit organization "shall have power . . . [t]o conduct its business, carry on its operations, have offices and exercise the powers granted by this article or any other provision of law in any jurisdiction within or without the United States," 15 Pa. Cons. Stat. § 5502(a)(15).  Citizens Alliance's incorporators (Senator Fumo's senate employees (*see* Ind. 87)), however, chose to limit Citizens Alliance's purposes to the promotion of "public health, housing, safety, and education in the City and County of Philadelphia."  Conceivably, Citizens Alliance could act outside of Philadelphia to accomplish its purposes inside Philadelphia, but the indictment alleges that Senator Fumo caused Citizens Alliance to act outside of Philadelphia for purposes outside the organization's scope.  Even if Citizens Alliance acted wholly inside Philadelphia, the alleged activities benefitting only Senator Fumo and Arnao personally and politically are outside the scope of promoting "public health, housing, safety, and education."

Acting contrary to the purposes stated in the articles of incorporation is wrongful.  *Cf.* 15 Pa. Cons. Stat. § 5503 (allowing enjoinment of and damages liability for ultra vires actions—i.e., actions beyond the scope of a corporation's power—in certain circumstances when the corporation has violated "[a] limitation upon the business, purposes or powers of a nonprofit corporation, expressed or implied in its articles").  And wrongful actions, accompanied by material misrepresentations and deliberate concealment, are proper grounds for charges of fraud.  Because these violations of the corporation's purposes are alleged to have been accompanied by misrepresentations and concealment, *see infra* Part III.B., they are properly used to support the indictment.

fund Citizens Alliance from the state of Pennsylvania, the city of Philadelphia, and PECO Energy Corp.  (Ind. 88-89.)  Allegedly, Senator Fumo used the funds and resources of Citizens Alliance for his personal benefit, purchasing tools, hardware, and other equipment, as well as groceries and sundries from Sam's Club, Home Depot, and Lowe's.  (Ind. 93.)  In addition, Citizens Alliance allegedly provided Senator Fumo with expensive vehicles, refurbished his Philadelphia district office, lent its employees for his personal use at his various properties, provided him with equipment for use at his farm, and paid for political polling.  (Ind. 93-95.)  In directing Citizens Alliance to fund his personal and political tasks in this way, Senator Fumo allegedly "extensively used the United States mail, commercial interstate carriers . . . , and interstate wire communications . . . in furtherance of the scheme to defraud Citizens Alliance."  (Ind. 96.)  The alleged loss to Citizens Alliance is "substantially in excess of one million dollars."  (Ind. 96.)

Senator Fumo argues that Counts 65 through 98 must be dismissed because the indictment does not sufficiently charge mail and wire fraud with respect to Citizens Alliance. Senator Fumo argues that (1) the indictment does not sufficiently allege "willful participation in the scheme to defraud," and (2) Senator Fumo's alleged failure to disclose his use of Citizens Alliance resources for his own personal and political benefit is not a sufficient basis on which to support an indictment for fraud.  (Def.'s Mem. 15-16.)

### A.    Intent

Mail and wire fraud are specific intent crimes.  *Pearlstein*, 576 F.2d at 537.  "[T]he defendants must either have devised the fraudulent scheme themselves, or have wilfully participated in it with knowledge of its fraudulent nature."  *Id.* (internal citation omitted).   Intent

is a question of fact, to be determined by a jury.  *See, e.g., Monteiro v. City of Elizabeth*, 436

F.3d 397, 405 (3d Cir. 2006).  "[T]he requisite knowledge and intent can be demonstrated

circumstantially." *Pearlstein*, 576 F.2d at 541.

The indictment generally alleges the following:

- Senator Fumo "exercised ultimate authority and directed and approved all

  significant projects undertaken by Citizens Alliance in which he had a personal

  interest" (Ind. 91);

- "at [Senator Fumo]'s direction," Arnao "controlled and managed the affairs of

  each of the Citizens Alliance subsidiaries" (Ind. 91);

- Senator Fumo "used funds and resources of Citizens Alliance for [his] personal

  benefit" (Ind. 93);

- Senator Fumo "arranged for Citizens Alliance to purchase numerous items for his

  personal benefit" (Ind. 93);

- Senator Fumo "used Citizens Alliance's employees as his personal servants" (Ind.

  94);

- Senator Fumo "used Citizens Alliance money not only to enrich himself, but also

  to further political goals" (Ind. 95);

- Senator Fumo and Ruth Arnao "regularly made and caused to be made false

  statements to Citizens Alliance's accountants, to tax authorities, and to others, in

  order to conceal the inappropriate use of the nonprofit organization's resources"

  (Ind. 95).

In alleging that Senator Fumo raised funds for Citizens Alliance, directed the operation of

Citizens Alliance, used Citizens Alliance's resources for his personal and political benefit, and made false statements to conceal his inappropriate use of Citizens Alliance's resources, the indictment is sufficient with respect to Senator Fumo's intent.

### B.      Misrepresentations and Failure to Disclose

Senator Fumo argues that the indictment is insufficient because "a mere omission is not sufficient to support a mail fraud allegation, unless there is a fiduciary relationship or a duty of disclosure imposed by law," and the indictment "fails to aver that Senator Fumo held any official title or position at Citizens Alliance, or owed a fiduciary [duty] to the board."  (Def.'s Mem. 16.) Senator Fumo may be liable, though, for Arnao's breaches of her fiduciary duty to the Citizens Alliance board of directors.  The indictment clearly alleges that Senator Fumo was a co-conspirator of Arnao, the executive director of Citizens Alliance (Ind. 92), and that he conspired with her and aided and abetted the fraud (Ind. 92, 165, 168, 173).  In addition, Senator Fumo allegedly "exercised ultimate authority" and "directed" the organization.  (Ind. 91.)  Therefore, Senator Fumo is allegedly responsible for Arnao's actions with respect to Citizens Alliance, and he may thus be held liable for the offenses.  *See Pearlstein*, 576 F.2d at 546 (acknowledging that "one who aids or abets the commission of an offense is equally liable as a principal"); *cf. United States v. Catena*, 500 F.2d 1319, 1322-23 (3d Cir. 1974) (holding that a defendant who caused a false claim to be presented to an insurance company, which then presented it to a federal agency, may be liable as a principal for violating the statute prohibiting presentation of a false claim to a federal agency).

Arnao is alleged to have violated her fiduciary duties by failing to disclose material facts

to the board of directors.  She allegedly never "disclosed to Citizens Alliance's board of directors the material fact that Citizens Alliance's assets were used in the manner described" in the indictment.  (Ind. 95-96; *see also* Ind. 106 (alleging Arnao's failure to disclose her use of a Citizens Alliance vehicle).)  Senator Fumo is allegedly responsible for Arnao's failure to disclose, as he is charged as her co-conspirator and accomplice; therefore, he may liable as a principle under a failure-to-disclose theory.[16]

The government, however, need not rely on a failure-to-disclose theory, as the indictment has also alleged material misrepresentations[17] and deliberate concealment[18] by Senator Fumo himself.  Either is sufficient to support allegations of mail and wire fraud, as explained at length above with respect to fraud on the Senate.  *See supra* Part II.B.3.a.  Moreover, to support the charges, misrepresentations need not be made directly to the victim.  In *United States v. Olatunji*,

---

[16] Title 18 U.S.C. § 2 creates accomplice liability:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

An indictment need not reference § 2 for a defendant to be convicted as an accomplice.  *Catena*, 500 F.2d at 1323.

[17] For a list of these alleged misrepresentations, see Part III.A., *supra*.

[18] "[N]either [Senator Fumo] nor [Ruth Arnao] disclosed to Citizens Alliance's board of directors the material fact that Citizens Alliance's assets were used in the manner described . . . ." (Ind. 95-96.)  The indictment further alleges that Senator Fumo took steps to hide his inappropriate use of Citizens Alliance resources.  (*See* Ind. 118, 124, 130-31, 132, 134, 135-36, 143-44.)

the defendant argued that "an indictment alleging 'false and fraudulent pretenses and representations' under 18 U.S.C. § 1341 must specifically allege that such false statements and representations were made *directly* to the ultimate victim."  872 F.2d at 1168.  The Third Circuit rejected that argument, declining to create "a special pleading rule for indictments under section 1341."  *Id.*; *accord United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998); *United States v. Pepper*, 51 F.3d 469, 472-73 (5th Cir. 1995).  Therefore, the allegations that Senator Fumo made misrepresentations and directed others to make representations to third parties—for example, to Citizens Alliance's accountants (Ind. 127-28), to the IRS (Ind. 128-30), to the state court that handled litigation involving Senator Fumo's political rival (Ind. 132-33), and to the Secretary of State of Pennsylvania in corporate filings (Ind. 134)—are sufficient.  Thus, I will not dismiss Counts 65 through 98 for failure to allege misrepresentations or deliberate concealment.

## IV.  Counts 101 and 103:  Aiding and Assisting the Filing of False Tax Returns

The indictment charges that Senator Fumo and Ruth Arnao "caused Citizens Alliance to make false tax filings to the Internal Revenue Service in order to conceal their use of Citizens Alliance funds for their personal and political benefit."  (Ind. 124.)  They "endeavored, through false filings and the intentional failure to file returns with the Internal Revenue Service, to prevent the IRS from ascertaining that Citizens Alliance engaged in political and other expenditures which are impermissible for a tax-exempt nonprofit organization."  (Ind. 176.)  In so doing, they thereby prevented the IRS from "questioning the tax exempt status of the organization and subjecting Citizens Alliance, and [Senator Fumo] and [Ruth Arnao] personally, to liability for income and excise taxes."  (Ind. 176.)

30

Specifically, Citizens Alliance's accounting firm prepared a Form 990 on behalf of

Citizens Alliance in the spring of 2003, as well as a Form 1120 (U.S. Corporation Income Tax

Return) of CA Holdings, Inc., the for-profit subsidiary of Citizens Alliance.  (Ind. 127.)

According to the government, the accountants questioned Arnao about the purpose of polling

expenditures made in 2002.  After being asked several times, Arnao asked the accounting firm to

"send her an e-mail presenting the question, and she asked that the accountants copy [Senator

Fumo] on the e-mail."  (Ind. 127.)  "Subsequently, according to the accountant's notes, [Ruth

Arnao] falsely replied that the polls were 'community surveys of residents to determine what

activities they would want the nonprofit to perform.'  Based on this false information, the

accountants completed the required federal returns."  (Ind. 128; *see also* Ind. 176.)  Arnao signed

the Form 1120, which falsely deducted polling expenses and payments to Senate Contractor No.

1 in exchange for political surveillance as 'Community Development Consulting.'"  (Ind. 128-30,

142; *see also* Ind. 177.)

Senator Fumo asks the court to dismiss Counts 101 and 103 of the indictment, relating to

Form 990 and Form 1120, respectively.  Senator Fumo argues that dismissal is appropriate, as

the indictment "does not allege that Senator Fumo received the e-mail, that Senator Fumo

answered the e-mail, or most significantly, that Senator Fumo aided or assisted in or procured[,]

counseled or advised anyone with respect to the answer which was given to the accountants."

(Def.'s Mem. 26.)

Three elements must be proved to convict a defendant under Internal Revenue Code §

7206(2)[19]:  (1) the defendant "assisted in the transaction"; (2) "the information return was false as to a material matter"; and (3) the defendant "acted unlawfully, knowingly, and willfully."  *United States v. La Haye*, 548 F.3d 474, 475 (3d Cir.  1977).  In proving assistance, "there must exist some affirmative participation which at least encourages the perpetrator." *United States v. Graham*, 758 F.2d 879, 885 (3d Cir.  1985) (quoting *United States v. Buttorff*, 572 F.2d 619, 623 (8th Cir.1978)).  Willfulness requires only "a voluntary, intentional violation of a known legal duty." *United States v.  Pomponio*, 429 U.S. 10, 12 (1976).

In Count 101, the indictment alleges that Senator Fumo, "[o]n or about May 15, 2003,"

> willfully aided and assisted in, procured, counseled, and advised the preparation and presentation to the Internal Revenue Service, of a United States Return of Organization Exempt from Income Tax, Form 990, of [Citizens Alliance], for the calendar year 2002, which was false and fraudulent as to material matters in that the return stated that Citizens Alliance had not provided any assistance outside the ordinary course of its nonprofit mission to individuals, had not made any 'direct or indirect political expenditures,' and had not engaged in any Section 4958 excess benefit transaction during the year, when in fact, as [Senator Fumo] well knew, [representations made to the accountants] were false . . . .

(Ind. 179.)  This allegation tracks the language of the statute, which, as noted above, is generally sufficient.  *See Hamling*, 418 U.S. at 116.  In addition, the indictment has alleged, as it must, that Senator Fumo's "affirmative participation" "encourage[d] the perpetrator" (here, Senator Fumo's

---

[19] Internal Revenue Code § 7206(2) provides:

> Any person who . . . [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . . shall be guilty of a felony.

codefendant, Ruth Arnao).  According to the government, "[o]n or about May 6, 2003, [Ruth

Arnao], acting at the *direction* of [Senator Fumo], falsely advised the independent accountants

for Citizens Alliance that the polling expenditures paid in 2002 by Citizens Alliance . . . were

community surveys of residents to determine what activities they would want the nonprofit to

perform."[20]  (Ind. 176 (emphasis added).)  Challenges to the sufficiency of the government's

proof are not appropriate at this stage of the prosecution, and the allegations are sufficient.

For the same reasons, Senator Fumo's motion to dismiss will be denied as to Count 103.

There, the indictment alleges that "[o]n or about September 12, 2003," Senator Fumo

> willfully aided and assisted in, procured, counseled, and advised the preparation and
> presentation to the Internal Revenue Service, of a U.S. Corporation Income Tax
> Return, Form 1120, of CA Holdings, Inc., for the calendar year 2002, which was
> false and fraudulent as to a material matter, in that the return declared a deduction of
> $151,425 for "Community Development Consulting," when in fact, as [Senator
> Fumo] well knew, this deduction was false and fraudulent, in that this sum included
> expenditures for political polling and other political campaign expenses which were
> not "community developing consulting" expenses and were not deductible.

(Ind. 181.)  Again, the indictment alleges that Arnao, in advising the accountants and signing the

return, acted at the direction of Senator Fumo.  (Ind. 176.)  Senator Fumo's motion to dismiss

this count will be denied, for the indictment has alleged each element of the statutory violation.

## V.    Obstruction of Justice in Violation of 18 U.S.C. § 1519

Taking the government's allegations as true, Senator Fumo, with actual knowledge of

---

[20] Senator Fumo argues that the indictment only "speciously alleges that Ms. Arnao was
acting at Senator Fumo's direction." (Def.'s Mem. 26.)  For the purposes of this motion,
however, the court must assume that the indictment's allegations are true.  Thus, I must assume
that Senator Fumo directed Arnao to give the accountants false information, knowing that the
information was false.

investigations by the FBI, the IRS, and a grand jury, from November 2003 to October 2005,

conspired to destroy, aided and abetted in the destruction of, and did destroy e-mail and other

electronic evidence "in order to prevent the FBI, the IRS, and this federal grand jury from

receiving or reviewing such evidence in the course of the investigation." (Ind. 197-98.) Senator

Fumo does not challenge the sufficiency of the allegations contained in the indictment. Rather,

he argues that the statute on which the charges are based, 18 U.S.C. § 1519, is unconstitutionally

vague and overbroad and so cannot be applied to him (or to anyone else).[21]


### A.    Vagueness

Senator Fumo claims that § 1519 "purports to criminalize [destruction of electronic files]

under an impossibly broad standard that is not susceptible of clear understanding and that is

susceptible to arbitrary enforcement." In addition, he argues that the statute "fails to give proper

notice of the scope of the prohibited conduct and gives unbridled discretion to prosecutors and so

chills the exercise of his [F]irst [A]mendment free speech and free association rights." (Def.'s

Mem. 28.)

The government argues in reply that Senator Fumo lacks standing to challenge 18 U.S.C.

§ 1519 on vagueness grounds because the statute clearly applies to his conduct. Further, the

government asserts that the statute provides adequate notice and sufficient guidance to law

enforcement authorities because of the intent element: "an official cannot indiscriminately and

retroactively declare conduct criminal; the government must instead muster proof beyond a

---

[21] As noted above, *see supra* note 1, Luchko has joined Senator Fumo's motion to
dismiss. The analysis is the same with respect to both defendants.

reasonable doubt that at the time of the charged action the defendant acted with intent to obstruct a contemplated investigation."  (Gov't Reply 57.)

"It is well-settled in American jurisprudence, that 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as its meaning and differ as to its application, violates the first essential of due process of law.'"  *Aiello v. City of Wilmington*, 623 F.2d 845, 850 (3d Cir. 1980) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).  Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and must "provide explicit standards for those who apply them."  *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

When a defendant asserts that a statute is unconstitutionally vague, the court must first determine whether the litigant's speech or conduct regulated by the statute might be constitutionally protected.  *Aiello*, 623 F.2d at 850.  If the defendant's "speech or conduct [is not] itself . . . constitutionally protected," the defendant "must demonstrate that the statute under attack is vague as applied to his own conduct, regardless of its potentially vague application to others."  *Id.*

### 1.    Constitutionally Protected Activity

Senator Fumo has not demonstrated that the conduct regulated by § 1519 is constitutionally protected.[22]  By its terms, 18 U.S.C. § 1519 regulates only conduct, applying

---

[22] 18 U.S.C. § 1519 provides:

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies,

solely to one who

> alters destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or . . . , or in relation to or contemplation of any such matter or case.

The First Amendment may restrict regulation of conduct, in addition to regulation of speech.

> The First Amendment's Free Speech Clause provides that "Congress shall make no law . . . abridging the freedom of speech." "Speech" is not construed literally, or even limited to the use of words.  Constitutional protection is afforded not only to speaking and writing, but also to some nonverbal acts of communication, *viz.*, "expressive conduct" (or "symbolic speech").

*Tenafly Eruv Assoc., Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002) (internal citation omitted).  Only "expressive conduct," however, is protected by the First Amendment. Conduct is expressive when "considering 'the nature of [the] activity, combined with the factual context and environment in which it was undertaken,' [the court is] led to the conclusion that the 'activity was sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'"  *Id.* at 158, 160 (quoting *Spence v. Washington*, 418 U.S. 405, 409-10 (1974); *Troster v. Pa. State Dep't of Corrs.*, 65 F.3d 1086, 1090 (3d Cir. 1995)). The Supreme Court has explicitly found the following to be expressive conduct:  burning an American flag as part of a political demonstration, attaching a peace symbol to an American flag and flying the "peace flag" upside down, wearing U.S. military uniforms as part of a performance

---

> or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

protesting the Vietnam War, wearing black armbands in protest of the Vietnam War, saluting the American flag, displaying a red flag to express opposition to the government, and marching in a parade. *See id.* at 159, 160 (listing cases). The Supreme Court also has assumed that sleeping in a public park to protest homelessness, burning Selective Service registration cards, sitting in at segregated lunch counters, and nude erotic dancing are expressive conduct. *See id.* at 159 n.16 (listing cases). In determining whether other forms of conduct are expressive, "the putative speaker bears the burden of proving that his or her conduct is expressive." *Id.* at 161.

Senator Fumo has not demonstrated that the conduct regulated by § 1519 is expressive conduct. He argues only that § 1519 will chill his First Amendment rights: because destruction of documents with the intent to obstruct a federal investigation is prohibited, he and others will be dissuaded from exercising their First Amendment rights "so as not to create communications which arguably could be within the purview of Section 1519." (Def.'s Mem. 31; *see also* Def.'s Reply 21.) Senator Fumo does not even suggest that the act of destroying documents is expressive activity; he has thus failed to meet his burden. The conduct regulated by the statute is not constitutionally protected.[23]

### 2.      Conduct Within the Permissible Purview of § 1519

The court does not reach the issue whether § 1519 is facially unconstitutional for

---

[23] Senator Fumo's brief in support of his motion to dismiss mentions in passing that § 1519 will "dissuade him and others" not only from exercising First Amendment free speech rights, but also from exercising free association rights. (Def.'s Mem. 31.) With respect to this argument, too, Senator Fumo has not proved, much less asserted, that the prohibition on destroying documents relevant to a federal investigation impinges his rights. He alleges only that § 1519's prohibition on document destruction will chill document creation, thereby violating his First Amendment rights. Section 1519 does not violate his right to free association.

vagueness because the statute clearly reaches Senator Fumo's alleged conduct in violation of the statute.  "[W]hen a litigant's conduct clearly falls within the permissible purview of a statute, such an individual lacks standing to challenge the statute for vagueness, even though the statute may well be vague even as applied to others."  *Aiello*, 623 F.2d at 850.

As applied to Senator Fumo, the statute requires knowing destruction, alteration, or concealment of records, documents, or tangible objects, and the intent to "impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States."[24]  The statute "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly" and "provide[s] explicit standards for those who apply them."  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).  It does not "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis."  *Id.*  In addition, § 1519 includes a scienter requirement, which "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  *Id.* at 499.  Therefore, at its most basic, the law does not inhibit the exercise of First Amendment rights.

Senator Fumo's argument that § 1519 is vague because the unique "in contemplation of" language used in it creates uncertainty is to no avail.  The indictment does not allege that Senator Fumo acted in response to a "contemplated" investigation; all of the allegations relate to an

---

[24] The statue also applies to destruction of documents with respect to investigations "within the contemplation of any . . . matter [within the jurisdiction of any department or agency of the United States]."  18 U.S.C. § 1519.  The indictment does not allege that Senator Fumo acted in response to a contemplated investigation; all of the allegations relate to an actual, ongoing investigation of which Senator Fumo allegedly had knowledge.

actual, ongoing investigation of which Senator Fumo allegedly had knowledge.  The beginning of the criminal investigation and widespread publicity about it preceded all of the conduct allegedly criminal under § 1519.  According to the indictment, the FBI and IRS began a criminal investigation of Senator Fumo, Citizens Alliance, Ruth Arnao, and others associated with Senator Fumo and Citizens Alliance in early 2003.  (Ind. 193.)  A grand jury investigation began in February 2003.  (Ind. 193.)  On November 16, 2003, the *Philadelphia Inquirer* began a series of front-page articles regarding the matters being investigated, and the indictment alleges that Senator Fumo "and other members of his staff closely monitored these articles."  (Ind. 195.)  Then, on January 24, 2004, Sentor Fumo "and his aides learned of an article scheduled to appear the next day in the *Philadelphia Inquirer* stating that [Senator Fumo] was the subject of an FBI investigation."  (Ind. 200.)  On April 28, 2004, "Citizens Alliance received a grand jury subpoena requesting, among other things, e-mail communications among and between" Sentor Fumo, Ms. Arnao, and others.  (Ind. 206.)  Taking the government's allegations, and inferences from those allegations, as true, there can be no doubt that Senator Fumo was aware that his conduct was relevant to a federal investigation at least as early as November 2003.

Count 109 alleges that Senator Fumo, along with Arnao, Luchko, and Eister, from "in or about November 2003 through in or about October 2005" conspired to "obstruct justice by destroying electronic evidence, including e-mail communications pertaining to matters within the scope of a federal criminal investigation."  (Ind. 197.)  The conduct alleged in the remaining counts challenged by Senator Fumo took place between April 6, 2004, and October 20, 2005.  The obstruction charges thus relate to an actual, contemporaneous federal investigation of which Senator Fumo was allegedly aware.

In each count the indictment alleges that Senator Fumo's actions were knowing.  With respect to the conspiracy to obstruct justice, the indictment alleges that "all conspirators acted at the direction of [Senator Fumo], with his knowledge and approval, and for his benefit."  (Ind. 198.)  With respect to the other counts, Senator Fumo is alleged to have "*knowingly* altered, destroyed, mutilated, and concealed records, documents, and tangible objects" (Ind. 233, 235, 236, 239, 241, 242, 245, 246, 248, 250, 251, 252, 254, 255, 256, 257, 258, 259, 260, 261, 262 (emphasis added)), just as § 1519, by its terms, requires.

In sum, then, Senator Fumo's alleged conduct "clearly falls within the permissible purview of" § 1519.  *Aiello*, 623 F.2d at 850.  Thus, Senator Fumo lacks standing to challenge the statute for vagueness.

### B.      Overbreadth

Senator Fumo argues that § 1519 is not only vague, but also overbroad:

> A statute of this enormous scope will prevent Senator Fumo as well as others like him from ever deleting *any* electronic communications or documents . . . . [which will in turn] dissuade Senator Fumo and others from exercising their First Amendment free association and free speech rights so as not to create communications which arguably could be within the purview of Section 1519.

(Def.'s Mem. 31.)  The government responds that the statute "does not apply to any conduct protected by the First Amendment."  (Gov't Reply Mem. 62.)  Furthermore, the government argues, the statute "is an ordinary criminal statute barring non-expressive conduct, without any reference to particular content."  (*Id.* at 65.)  As a content-neutral statute that does not reach expressive conduct, the government asserts that there are no grounds for a First Amendment overbreadth challenge.

The overbreadth doctrine provides that an overbroad statute—i.e., a statute that may "cause others not before the court to refrain from constitutionally protected speech or expression"—may not be applied to anyone "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973).  A litigant must "demonstrate from the text of [the challenged law] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally." *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988).

"Application of the overbreadth doctrine . . . is, manifestly, strong medicine." *Broadrick*, 413 U.S. at 613.  Especially in the case of a statute regulating conduct, rather than speech, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615.  "[O]verbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." *Id.*  Further limiting the reach of the overbreadth doctrine as applied in the instant case, the Supreme Court concluded:

> [T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the [government] to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.

*Id.*

As explained above, § 1519 regulates conduct, not speech.  The conduct it regulates—destruction of documents with the intent to obstruct a federal investigation—is not

expressive.  Similarly, § 1519 does not regulate expressive association.  Section 1519 is "otherwise valid," as it was within Congress's power to enact.  Finally, Senator Fumo has not used actual facts to demonstrate that a substantial number of instances exist in which § 1519 cannot be applied constitutionally.  Therefore, § 1519 is not unconstitutionally overbroad.

## VI.     Conclusion

Senator Fumo challenges, on the ground that the indictment fails to sufficiently support the charges, the allegations of (1) mail and wire fraud and conspiracy to commit mail and wire fraud on the Senate, (2) mail and wire fraud and conspiracy to commit mail and wire fraud on Citizens Alliance, and (3) aiding and assisting the filing of false tax returns on behalf of Citizens Alliance.  Senator Fumo challenges the charges of obstruction of justice and conspiracy to obstruct justice on the ground that the statute on which they are based is unconstitutional.  For the reasons set forth above, Senator Fumo's motion to dismiss the superseding indictment will be denied.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
|   v. | : | |
| | : | NO. 06-319 |
| VINCENT J. FUMO, | : | |
| Defendant. | : | |
| | : | |

# Order

AND NOW on this _____ day of October 2007, upon careful consideration of defendant Senator Vincent J. Fumo's motion to dismiss (Docket No. 127), joined by defendants Mark Eister, Leonard Luchko, and Ruth Arnao, the government's response thereto, Senator Fumo's reply, and Senator Fumo's and the government's supplemental briefs, IT IS HEREBY ORDERED that the defendants' motion is DENIED.


_____ s/ William H. Yohn Jr. _____
William H. Yohn Jr., Judge