# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-319 |
| VINCENT J. FUMO et al., | : | |
| Defendants. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                                                    June ___, 2008

      Presently before the court is the motion of defendant Pennsylvania State Senator Vincent J. Fumo to suppress evidence obtained pursuant to three search warrants.  Fumo argues that the search and seizure conducted pursuant to each warrant "infringed and impaired a reasonable and legitimate expectation of privacy enjoyed by [Fumo] and constituted an unreasonable search affecting his Fourth Amendment constitutional 'right to be secure in his . . . papers and effects.'" (Fumo's Mot. for Suppression of Evidence 2.)  Fumo's codefendants Ruth Arnao and Leonard P. Luchko have joined Fumo's motion to suppress.  For the following reasons, I will deny the motion in part and schedule a hearing to resolve the remaining issue.

## I.     Background

      A superseding indictment ("the indictment") was filed on February 6, 2007, with charges against Fumo, Arnao, and Luchko.[1]  The indictment charged Fumo in connection with four

---

[1] The indictment also charged Mark C. Eister, who has not joined in the instant motion.

categories of wrongdoing:  (1) fraud and conspiracy to commit fraud on the Senate of

Pennsylvania; (2) fraud and conspiracy to commit fraud on Citizens Alliance for Better

Neighborhoods ("Citizens Alliance"), conspiracy to obstruct the Internal Revenue Service

("IRS"), and aiding and assisting in the filing of false tax returns related to Citizens Alliance; (3)

fraud on the Independence Seaport Museum; and (4) obstruction of justice and conspiracy to

obstruct justice.  Arnao was charged in connection with the alleged fraud on Citizens Alliance

and related tax crimes.  Luchko was charged as part of the alleged scheme to obstruct justice.

As part of its investigation of these and other possible crimes for which the defendants

were not indicted, the government applied for and obtained three search warrants.  The first

warrant was issued on February 18, 2005 and authorized a search of Fumo's Philadelphia

legislative office (the "February 18 warrant").  The second warrant was issued on October 19,

2005 and authorized a search of Luchko's home (the "October 19 warrant").  As the investigation

expanded, the government applied for a third search warrant, which was issued on January 31,

2007 and authorized additional searches of previously seized computer equipment (the "January

31 warrant").

On March 3, 2008 Fumo filed the instant motion for suppression of evidence—namely,

"correspondence and records of the defendant kept in electronic form" (Fumo's Mot. 1)—and an

accompanying memorandum of law.  The government filed its response to Fumo's motion on

March 12, 2008.  Then, on March 13, 2008, Luchko filed a motion to join in Fumo's motion, and

the government responded on March 13, 2008.  Arnao filed her motion to join in Fumo's motion

on March 17, 2008, to which the government responded on March 19, 2008.  Fumo filed a reply

in further support of his motion on March 31, 2008.[2]


## II.    Discussion

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The warrant clause of the Fourth Amendment requires that a warrant be issued by a neutral and detached magistrate, be supported by probable cause, and particularly describe the place to be searched and the things to be seized.  *See United States v. Ritter*, 416 F.3d 256, 262, 264-65 (3d Cir. 2005) (explaining probable cause and particularity requirements); *United States v. McNally*, 473 F.3d 934, 936 n.2 (3d Cir. 1973) (explaining magistrate requirement).

When a defendant's Fourth Amendment rights have been violated by a search or seizure pursuant to a warrant that does not conform to these requirements, "the principal means today for effectuating the rights secured by the Fourth Amendment is through the judicially created exclusionary rule."  *United States v. Christine*, 687 F.2d 749, 757 (3d Cir. 1982).  The purpose of the exclusionary rule is to deter official law enforcement conduct that violates citizens' Fourth Amendment rights.  *United States v. Leon*, 468 U.S. 897, 919 (1984).  "The deterrent purpose of

---

[2] In his reply, Fumo argues that the court should hold this motion in abeyance until the government discloses its trial exhibit list.  (Fumo's Reply Supp. Fumo's Mot. for Suppression of Evidence 2.)  However, the scheduling order governing this case, entered into by agreement of the parties, provides for briefing on the suppression motion to be completed before the government produces its tentative trial exhibit list.  I will abide by the parties' scheduling decisions.

the exclusionary rule necessarily assumes that [law enforcement officials] have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *United States v. Peltier*, 422 U.S. 531, 539 (1975) (quoting *Michigan v. Tucker*, 417 U.S. 433, 447 (1974)).  "By excluding evidence seized as a result of an unconstitutional search and seizure, 'the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused.'"  *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) (quoting *Peltier*, 422 U.S. at 539).  "Because the 'purpose of the exclusionary rule is to deter unlawful . . . conduct [by law enforcement],' the fruits of an unconstitutional search should be suppressed if, despite the magistrate's authorization, an objectively reasonable, well-trained officer would have known that the search violated the Fourth Amendment."  *Id.* (quoting *Leon*, 468 U.S. at 919).  "Concomitantly, suppression should not be ordered where an officer, acting in objective good faith, has obtained a warrant without probable cause because in such cases only marginal deterrent purposes will be served which 'cannot justify the substantial costs of exclusion.'"  *Id.*  (quoting *Leon*, 468 U.S. at 922).

"The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated."  *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).  He must make this showing by a preponderance of the evidence.  *United States v. Fleet Mgmt. Ltd.*, 521 F. Supp. 2d 436, 441 (E.D. Pa. 2007) (citing *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974)).

### A.      February 18 Warrant Authorizing Search of Fumo's Senate Office

On February 18, 2005, United States Magistrate Judge M. Faith Angell issued a warrant

4

authorizing FBI agents to search Fumo's Philadelphia legislative office.  This warrant, based on a forty-page affidavit sworn by an FBI special agent, permitted seizure of the following[3]:

1.      For the period of April 28, 2004 through the present, opened and unopened email for [twenty-one email addresses on the fumo.com server] concerning, relating or reflecting the receipt by Citizens Alliance . . . of the Federal Grand Jury subpoenas served on or about April 28, 2004 and on or about January 19, 2005, efforts to comply with these subpoenas, and efforts to delete or destroy documents, records or electronic data files, including email.

2.      All communications concerning, relating or pertaining to the January 26, 2005 email from Leonard Luchko to the email addresses identified in paragraph 1 above instructing these individuals to delete any and all email communications with Senator Vince Fumo.  This includes any email communications in response to the January 26, 2005 email or relating to efforts to comply with the instructions in the January 26, 2005 email.

3.      All email communications between Senator Vince Fumo and the email accounts identified in paragraph 1 above that were deleted in response to the January 26, 2005 email from Leonard Luchko or any email communications which any of the email account users identified in paragraph 1 above attempted to delete.

4.      For the period of January 1, 1999 through the present, all documents, records and electronic data files concerning or pertaining to the following:

a.      Examinations, inspections, reviews or audits conducted for Citizens Alliance . . . by any outside auditors, including Stockton Bates LLP, state auditors, and federal auditors (including IRS audits).

b.      Grants, contributions, donations or pledges solicited and/or received by Citizens Alliance.

c.      Federal, state and local tax records and returns concerning or pertaining to Citizens Alliance.

d.      Communications involving or concerning Senator Vincent Fumo or S.R. Wojdak & Associates regarding or concerning the solicitation or receipt of contributions or donations from PECO Energy Company,

---

[3] The e-mail sent by Luchko, referred to in the list of items to be seized, went to twenty employees in Fumo's Philadelphia legislative office.  It reminded them to delete all e-mail sent to or from Fumo.  (*See* Ind. 221-22.)

Verizon, and any other prospective or actual donor or contributor.

e.      Settlement of litigation between Senator Fumo and Verizon, including settlement demands, settlement terms, term sheets, compliance or noncompliance with settlement terms, payments by Verizon in connection with the settlement to parties designated by Senator Fumo and efforts to obtain compliance with any settlement terms agreed to by Senator Fumo and Verizon.

f.      The expenditure or transfer of funds by Citizens Alliance including, but not limited to, the dates, amounts, recipients and purposes of the expenditures.  This request also specifically includes any grants or donations made by Citizens Alliance to other persons or entities.

g.      The purchase or sale of real estate by Citizens Alliance and records regarding the renovation or improvement of any properties owned by Citizens Alliance.

h.      Communications concerning, relating or referring to the following:  any work performed by Global Strategy Group LLC or Kiley and Company, payments to Global Strategy Group LLC or Kiley and Company, authorization to pay invoices submitted by Global Strategy Group LLC or Kiley and Company, invoices submitted by Global Strategy Group LLC or Kiley and Company, accounting and tax treatment of payments to Global Strategy Group LLC or Kiley and Company, discussions with outside accountants (including but not limited to Stockton Bates LLP) concerning the accounting and tax treatment of payments to Global Strategy Group LLC or Kiley and Company, reimbursement from third parties for payments made by Citizens Alliance to Global Strategy Group LLC or Kiley and Company.

i.      Any and all documents and records (including but not limited to email) reflecting, concerning, or referring to the approval of invoices submitted to Citizens Alliance and authorization to pay invoices submitted to Citizens Alliance.

j.      Communications concerning, relating or reflecting the receipt by Citizens Alliance of the Federal Grand Jury subpoenas served on or about April 28, 2004 and on or about January 19, 2005, efforts by Citizens Alliance to comply with these subpoenas, efforts by Citizens Alliance to search for, identify and produce records in response to the subpoenas, and efforts to delete or destroy documents, records or electronic data files, including email.

5.      Computer and computer-related equipment containing the records identified in paragraphs 1-4(a)-(j) . . . .

Fumo argues that the February 18 warrant is deficient in five respects:  (1) it does not meet the constitutional standard of particularity; (2) it is a prohibited general warrant; (3) it is overbroad; (4) it was not issued by a neutral and detached magistrate; and (5) it was executed unreasonably. Importantly, Fumo does not allege that any category of information to be seized described in the warrant is unsupported by probable cause.[4]  The government asserts in response that the warrant, search, and seizure conformed to the Fourth Amendment's requirements.

First, Fumo asserts that the warrant is insufficiently particular because the magistrate judge who issued the warrant failed to specify the particular crimes for which the agents were authorized to search for evidence.  But because a search warrant need not specify the particular crimes for which evidence is sought, the warrant is not defective on this basis.

The Fourth Amendment "specifies only two matters that must be 'particularly describ[ed]' in the warrant:  'the place to be searched' and 'the persons or things to be seized.'" *United States v. Grubbs*, 547 U.S. 90, 97 (2006).  The Supreme Court has "rejected efforts to expand the scope of [the Fourth Amendment's particularity requirement] to embrace unenumerated matters."  *Id.*  Thus, "there is no per se requirement that a search warrant describe the criminal activity alleged."  *United States v. Kofsky*, No. 06-392, 2007 WL 2480971, at *16 (E.D. Pa. Aug. 28, 2007) (citing *United States v. Slaey*, 433 F. Supp. 2d 494, 495 n.1 (E.D. Pa. 2006)); *accord* 2 Wayne R. LaFave, *Search and Seizure* § 3.1(b), at 7 n.28 (3d ed. 1996) (noting

---

[4] Fumo also does not dispute that the affidavits supporting each of the warrants at issue here set forth probable cause as to each of the crimes described by the FBI agent in those affidavits.  Furthermore, Fumo does not point to specific categories of items to be seized described in the attachments to the warrants that do not relate to factual averments of the conduct of Fumo and others in violation of federal law made by the FBI agents in the affidavits.

that "[i]t need not be certain precisely what crime was committed" and citing cases in support). For this reason, I will deny Fumo's motion with respect to his claim that the February 18 warrant is unconstitutional for its failure to specify the crimes for which evidence was sought.[5]

Second, Fumo asserts that the February 18 warrant "constitutes a prohibited general warrant, in that it fails to state which of the various offenses mentioned in the supporting affidavit the [m]agistrate [j]udge found probable cause to believe had been committed, and as to which the [m]agistrate [j]udge concluded that probable cause existed to believe that evidence would be found in a search of the specified places at that time." (Fumo's Mot. 2.)

A general warrant is a warrant that authorizes "a general exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A general warrant "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence." *Christine*, 687 F.2d at 753. A warrant is not a general warrant when "[its] clauses describe in both specific and

---

[5] Designation of the specific crimes under investigation may sometimes be necessary to limit the discretion of the officer executing the warrant. *See Marron v. United States*, 275 U.S. 192, 196 (1927) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."). Thus, including a description of the crimes for which the defendant was under investigation may save a warrant that would otherwise be overbroad. *See Kofsky*, 2007 WL 2480971, at *16 (citing, in support of this proposition, *United States v. Bridges*, 344 F.3d 1010, 1018 (9th Cir. 2003); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995); *United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993); and *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)). *United States v. Johnson*, 690 F.2d 60 (3d Cir. 1982), which Fumo cites in support of his motion, is an example of this technique. *Johnson* stands for the proposition that reference to a particular crime in a search warrant or incorporated affidavit may save an otherwise general warrant. *See id.* at 64-65. As described below, the warrants at issue here, which do not reference specific crimes, are not general warrants; therefore, *Johnson* is inapplicable.

inclusive generic terms what is to be seized."  *Id.*  According to the Third Circuit, general warrants include those "authorizing searches for and seizures of such vague categories of items as 'smuggled goods,' 'obscene materials,' 'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas,' 'illegally obtained films,' and 'stolen property.'" *United States v. $92,422.57*, 307 F.3d 137, 149 (3d Cir. 2002) (some internal quotations marks omitted).  On the other hand, the Third Circuit has held that a warrant authorizing a search for and seizure of the following was not a general warrant:

> (a) all folders and all documents contained therein and all other documents relating to home improvements and home improvement contracts pursuant to the HUD Title I Insured Home Improvement Loan program;

> (b) all checks, check stubs and bank statements, deposit slips and withdrawal slips, reflecting the receipt and disbursement of funds through Landmark Builders, Inc. for the period January 1, 1977 to the present;

> (c) all general ledgers, general journals, cash receipt disbursement ledgers and journals for the period January 1, 1977 to the present;

> (d) all correspondence to and from and submissions to Collective Federal Savings and Loan; and

> (e) all other documents, papers, instrumentalities and fruits of the crime of submission of false statements in connection with the HUD Title I Insured Home Improvement Loan program as well as any evidence of a scheme to defraud HUD or Collective Federal Savings and Loan or any other creditor by use of the United States mails.

*Christine*, 687 F.2d at 751, 753.  Similarly, a warrant authorizing a search for and seizure of the following was held not to be a general warrant:

> 1. Receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence.

9

> 2.      Computers, computer peripherals, related instruction manuals and notes, and software in order to conduct an off-site search for electronic copies of the items listed above.

*$92,422.57*, 307 F.3d at 144, 149.  The February 18 warrant, like the warrants at issue in the two cases quoted immediately above, is not "general."  It "'describe[d] in . . . inclusive generic terms what is to be seized.'  It did not vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished."  *See id.* at 149 (citing *Christine*, 687 F.3d at 753).  Moreover, "[b]y directing the searching officers to seize all of these items, the magistrate, rather than the officer, determined what was to be seized."  *See Christine*, 687 F.3d at 753.  Therefore, I will deny Fumo's motion with respect to his claim that the February 18 warrant is an unconstitutional general warrant.

Third, Fumo asserts that the February 18 warrant "is overbroad, in that it purports to authorize a search and seizure of substantially more of the defendant's papers and effects than is justified by the showing of probable cause."  (Fumo's Mot. 2.)  Fumo alleges generally that "each warrant purports to authorize a search and seizure of substantially more of the defendant's papers and effects than is justified by the showing of probable cause."  (Fumo's Mem. Supp. Fumo's Mot. for Suppression of Evidence 8-9.)

An overbroad warrant "'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause."  *$92,422.57*, 307 F.3d at 149 (quoting *Christine*, 687 F.2d at 753-54).  To determine whether a warrant is overbroad, the reviewing court must "measur[e] the scope of the search and seizure authorized by the warrant against the ambit of probable cause established by the affidavit upon which the warrant issued."  *Christine*, 687 F.2d at 753.  The mere fact that a warrant authorizes

10

seizure of a large number of documents does not render a warrant overbroad, "so long as there exists a sufficient nexus between the evidence to be seized and the alleged offenses." *United States v. Am. Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1105 (3d Cir. 1989).  This is especially true "in the context of large-scale, document-intensive corporate offenses," with respect to which the Third Circuit has provided for "greater flexibility in making the probable cause determination." *United States v. Yusuf*, 461 F.3d 374, 379 (3d Cir. 2006).  When evaluating allegations of overbreadth, the reviewing court must pay "great deference" to the magistrate's determination of probable cause.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

The government did not respond to Fumo's assertion that the warrant is overbroad, but asserted that "Fumo makes no allegation (nor could he) that the authorized seizure of any category of information described in [the February 18] warrant was not supported by probable cause." (Gov't Resp. Opp'n Fumo's Mot. for Suppression of Evidence 9.)  Neither Fumo nor the government specifically briefed the question whether "the scope of the search and seizure authorized by the warrant" is consistent with "the ambit of probable cause established by the affidavit upon which the warrant issued."  *See Christine*, 687 F.2d at 753.  The lack of argument regarding probable cause as to particular categories of items listed in the warrant or items seized is decisive.  Without some specificity the court cannot conduct a reasoned analysis and the claim is waived.  A hearing is not required, given the absence of any relevant factual allegations.  *See infra* note 6.  Therefore, I will deny Fumo's motion as to this claim.

Fourth, Fumo asserts that the February 18 warrant "was not issued by a neutral and detached magistrate, in that the warrant includes on its face instructions for its execution . . . which have no logical bearing on that warrant." (Fumo's Mot. 2.)  The instructions to which

11

Fumo objects are in small type near the bottom of the warrant and read as follows:

> It is further directed, pursuant to 18 U.S.C. § 2703(b)(1)(A) that no notice of this warrant shall be given to the subscriber of the email account identified in Attachment A and that, pursuant to 18 U.S.C. § 2703(f), law enforcement agents may serve this warrant upon Voicenet in any reasonable manner and do not have to be present during the service or execution of the warrant.

The government responds that "the passage was plainly mistaken and irrelevant, in that the warrant was not directed to Voicenet," and the agent "was plainly entitled to rely on [the warrant] in good faith."  (Gov't Resp. 24.)

"[T]he courts must . . . insist that the magistrate purport to perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police."  *Leon*, 468 U.S. at 914 (internal quotations marks omitted) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *abrogated by Leon*, 468 U.S. 897).  "A magistrate failing to 'manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application' and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search."  *Id.* (quoting *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-327 (1979)).

It is true that "a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid . . . because the form of the warrant was improper in some respect."  *Leon*, 468 U.S. at 915.  To reach this result, however, a defendant "must show[] not just that the [m]agistrate [j]udge erred in issuing the search warrant at issue, but that the [m]agistrate [j]udge's error was so obvious that a law enforcement officer, without legal training, should have realized, upon reading the warrant, that it was invalid and should thus have declined to execute it."  *$92,422.57*, 307 F.3d at 146.

An improperly written warrant should lead to suppression of evidence only when exclusion will deter law enforcement officers from engaging in conduct that violates the Fourth Amendment. *Id.* at 918. Indeed, "[s]uppressing evidence obtained pursuant to a technically defective warrant supported by probable cause . . . might encourage officers to scrutinize more closely the form of the warrant and to point out suspected judicial errors." *Id.* However, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* For example, in *Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984), suppression was not required where the officers executing the warrant "reasonably believed that the search they conducted was authorized by a valid warrant." There,

> [t]he officers . . . took every step that could reasonably be expected of them. Detective O'Malley prepared an affidavit which was reviewed and approved by the District Attorney. He presented that affidavit to a neutral judge. The judge concluded that the affidavit established probable cause to search Sheppard's residence, and informed O'Malley that he would authorize the search as requested. O'Malley then produced the warrant form and informed the judge that it might need to be changed. He was told by the judge that the necessary changes would be made. He then observed the judge make some changes and received the warrant and the affidavit. At this point, a reasonable police officer would have concluded, as O'Malley did, that the warrant authorized a search for the materials outlined in the affidavit.

*Id.* at 989. Even though the judge did not, in fact, correct the warrant form, and "[a]n error of constitutional dimensions may have been committed with respect to the issuance of the warrant, . . . it was the judge, not the police officers, who made the critical mistake." *Id.* at 990. Therefore, exclusion of the seized evidence was not required. *Id.* at 991.

In this case, the government submits that "[t]his passage, pertinent to a warrant directed to a provider of electronic communications, was mistakenly left on the form by the prosecutor's

13

office which prepared it, after being properly used in an earlier warrant." (Gov't Resp. 24.)  The

government further asserts that "the agent painstakingly prepared an affidavit and proposed a

detailed list of items to be seized, which never referred to Voicenet but instead correlated

precisely with the factual allegations of the affidavit. . . . [The] error is not attributable to the

agent." (*Id.* at 24-25.)  The government has offered to present "the agent's . . . testimony that, to

her observation, [the magistrate] carefully reviewed the warrant materials and did not simply sign

whatever was put in front of her, as Fumo seems to suggest." (*Id.* at 26 n.11.)

To resolve the question whether the magistrate was neutral and detached and whether the

erroneously included paragraph invalidates the warrant, I will hold a hearing to determine

whether the magistrate "advised [the agent], by word and by action, that the warrant [she]

possesses authorizes [her] to conduct the search [she] . . . requested," *Sheppard*, 468 U.S. at 990,

and to ensure that the magistrate did not act "as a rubber stamp" for law enforcement, *Leon*, 468

U.S. at 914.  This claim thus will remain pending.

Fifth, Fumo asserts that the February 18 warrant "was executed unreasonably, in that

entire computers and computer servers were seized without first determining (as required by the

warrant) that each of those computers actually" contained the records described in the warrant.

(Fumo's Mot. 2-3.)  Fumo argues in his accompanying memorandum of law that "[t]he February

18 warrant . . . authorized a seizure and search of the entirety of any 'computer and computer-

related equipment' that merely 'contain[ed]' any of the specified records, without regard to what

other information those computers contained or how much." (Fumo's Mem. 9.)  The

government argues in response that the magistrate judge "authorized the seizure of the

equipment" and "[i]mmediately after the seizure, the government made copies of the seized

14

computer records and promptly returned the equipment to Fumo's office." (Gov't Resp. 18.)
The government continues:  "Given the size of the materials at issue here, it was unquestionably
reasonable for the government to conduct an offsite review of a copy of the materials." (*Id.* at
19-20.)

I have already concluded that "because of the nature of computer files, the government
may legally open and briefly examine each file when searching a computer pursuant to a valid
warrant," in order to determine which files are described by the warrant.  *See United States v.
Fumo*, No 06-319, 2007 WL 3232112, at *6 (E.D. Pa. Oct. 30, 2007).  For "few people keep
documents of their criminal transactions in a folder marked '[crime] records.'" *United States v.
Riley*, 906 F.2d 841, 845 (2d Cir. 1990).  Given the large volume of information on computer
equipment and security concerns, for reasons of practicality the government may conduct this
review of computer files offsite.  For example, in *United States v. Stewart*, another district court
judge upheld a search and seizure pursuant to a warrant authorizing seizure of "[a]ll computer
hardware and software containing any of the items mentioned in paragraphs 1 and 2 of this
Attachment."  No. 96-583, 1997 WL 189381, at *1 (E.D. Pa. Apr. 16, 1997).  The "computers
were taken [by the agents] with the intent to copy the files, return the computers, then later sort
through the files for relevant information." *Id.* at *4.  The court found the procedure to be
"proper" and not violative of the Fourth Amendment because "[i]t was simply not practical for
the agents to search at the scene all the files on the computer hard drives of all three computers as
well as their accompanying diskettes, especially since their computer expert was not at the search
location." *Id.*  The court further noted that "[s]uch a procedure, that is, taking voluminous
documents or computer files for copying and sorting away from the search location, has been

upheld." *Id.* (citing *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988); *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986); *United States v. Santarelli*, 778 F.2d 609, 616 (11th Cir. 1985)); *see also, e.g.*, *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) (agreeing with the district court's explanation of the physical and technical problems with onsite review of computer equipment and upholding seizure of computer equipment that the magistrate judge had found to be reasonable); *United States v. Campos*, 221 F.3d 1143, 1147-48 (10th Cir. 2000) (upholding seizure of computer equipment where, in the warrant application, "the FBI agent provided an explanation as to why it was not usually feasible to search for particular computer files in a person's home" and "the officers here did not expand the scope of their search in a manner not authorized by the warrant"); *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("[I]t is no easy task to search a well-laden hard drive by going through all of the information it contains, let alone to search through it and the disks for information that may have been 'deleted.'  The record shows that the mechanics of the search for images later performed off site could not readily have been done on the spot."); *United States v. Schandl*, 947 F.2d 462, 465-66 (11th Cir. 1991) ("[I]t might have been far more disruptive had the agents made a thorough search of each individual document and computer disc before removing it from [the defendant's] home and office.  To insist on such a practice would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search."  (internal quotation marks omitted)).  Therefore, I will deny Fumo's motion as to this claim.[6]

---

[6] Fumo repeatedly requests a hearing and suggests that additional facts, presumably supportive of his motion, will come to light at a hearing.  (*See, e.g.*, Fumo's Mot. 4; Fumo's Mem. 1, 10; Fumo's Reply 1.)  However, a hearing is required only when the defendant has alleged sufficient facts demonstrating that material factual disputes exist.  *See, e.g.*, *United States v. Jihad*, 159 F. App'x 367, 369 (3d Cir. 2005) (citing *United States v. Howell*, 231 F.3d 615,

In sum, I find no reason to suppress evidence obtained pursuant to the February 18 warrant on the grounds of lack of particularity, generality, overbreadth, or unreasonable execution.[7]  I will hold a hearing on the question whether the warrant was issued by a neutral and detached magistrate.

**B.      October 19 Warrant Authorizing Search of Luchko's Home**

On October 19, 2005, United States Magistrate Judge Carol Sandra Moore Wells issued a warrant authorizing FBI agents to search Luchko's home (the "October 19 warrant").  This warrant, based on a fourteen-page affidavit sworn by a second FBI special agent, authorized seizure of the following:

> 1.      For the period January 1, 1999 to the present, all documents, records or other tangible items concerning, relating or reflecting the receipt or the anticipated receipt by Senator Vincent J. Fumo or his employees and staff, Citizens Alliance . . . or other organizations affiliated or associated with Senator Fumo, of Federal Grand Jury subpoenas and Federal Search Warrants.

> 2.      For the period January 1, 1999 to the present, all documents, records or other tangible items concerning, relating or reflecting efforts by Senator Vincent J. Fumo or his employees and staff, Citizens Alliance . . . or other organizations affiliated or associated with Senator Fumo, to comply with any federal grand jury subpoenas or federal search warrants.

> 3.      For the period January 1, 1999 to the present, all documents, records or other tangible items concerning, relating or reflecting, efforts by Senator Vincent

---

620 (9th Cir. 2000); *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996); *United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994)).  Fumo has not alleged sufficient facts to demonstrate that a material factual dispute exists as to whether the warrant was unreasonably executed, so I will not conduct a hearing on this issue.

[7] Arnao and Luchko have joined Fumo's motion for suppression but have made no additional arguments; as to them, too, and for the same reasons, I will deny Fumo's motion as to these claims.

J. Fumo or his employees and staff, Citizens Alliance . . . or other organizations affiliated or associated with Senator Fumo to search for, identify and produce records relating to or concerning any federal criminal investigation, and efforts to delete or destroy such documents, records or electronic data files, including but not limited to, email.

      4.     For the period January 1, 1999 to the present, all documents, records or other tangible items concerning, relating or reflecting email and other document retention and destruction policies in the Office of State Senator Vincent Fumo.

      5.     For the period of January 1, 1999 through the present, all documents, records and electronic data files concerning or pertaining to the following:

      a.     Examinations, inspections, reviews or audits conducted for Citizens Alliance . . . by any outside auditors, including Stockton Bates LLP, state auditors, and federal auditors (including IRS audits).

      b.     Grants, contributions, donations or pledges solicited and/or received by Citizens Alliance.

      c.     Federal, state and local tax records and returns concerning or pertaining to Citizens Alliance.

      d.     Communications involving or concerning Senator Vincent Fumo or S.R. Wojdak & Associates regarding or concerning the solicitation or receipt of contributions or donations from PECO Energy Company, Verizon, and any other prospective or actual donor or contributor.

      e.     Settlement of litigation between Senator Fumo and Verizon, including settlement demands, settlement terms, term sheets, compliance or noncompliance with settlement terms, payments by Verizon in connection with the settlement to parties designated by Senator Fumo and efforts to obtain compliance with any settlement terms agreed to by Senator Fumo and Verizon.

      f.     The expenditure or transfer of funds by Citizens Alliance including, but not limited to, the dates, amounts, recipients and purposes of the expenditures.  This request also specifically includes any grants or donations made by Citizens Alliance to other persons or entities.

      g.     The purchase or sale of real estate by Citizens Alliance and records regarding the renovation or improvement of any properties owned by Citizens Alliance.

h.    Communications concerning, relating or referring to the following: any work performed by Global Strategy Group LLC or Kiley and Company, payments to Global Strategy Group LLC or Kiley and Company, authorization to pay invoices submitted by Global Strategy Group LLC or Kiley and Company, invoices submitted by Global Strategy Group LLC or Kiley and Company, accounting and tax treatment of payments to Global Strategy Group LLC or Kiley and Company, discussions with outside accountants (including but not limited to Stockton Bates LLP) concerning the accounting and tax treatment of payments to Global Strategy Group LLC or Kiley and Company, reimbursement from third parties for payments made by Citizens Alliance to Global Strategy Group LLC or Kiley and Company.

i.    Any and all documents and records (including but not limited to email) reflecting, concerning, or referring to the approval of invoices submitted to Citizens Alliance and authorization to pay invoices submitted to Citizens Alliance.

6.    Computer and computer-related equipment containing the records identified in paragraphs 1-5 above . . . .

Fumo argues that the October 19 warrant is constitutionally deficient and was executed unreasonably.  Again, Fumo does not allege an absence of probable cause for the seizure of the categories of items described in the warrant.

First, because I conclude that Fumo and Arnao do not have standing to challenge this warrant or the search authorized by it, I will deny the motion as to the evidence obtained pursuant to this warrant.[8]  "[I]n order to claim the protection of the Fourth Amendment, a defendant must

---

[8] I recognize, as Fumo points out, that the Supreme Court held in *Rakas*, 439 U.S. 128, 139 (1978)), that the typical "standing" analysis is inapplicable to Fourth Amendment questions. The Third Circuit has adopted the First Circuit's clarification of the appropriate analysis:

The "standing" inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated.  *See United States v. Kimball*, 25 F.3d 1, 5 (1st Cir. 1994) ("We use the term 'standing' as a shorthand method of referring to the issue of whether the defendant's own Fourth Amendment interests were implicated by the challenged governmental action.  'Technically, the concept of "standing" has not had a place in Fourth Amendment jurisprudence for more than a decade, since the Supreme Court

demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one that has 'a source outside of the Fourth Amendment . . . .'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 143 n.12).  Even when the item that was seized during an illegal search of a third party's home belongs to the party contesting the constitutionality of the search (rather than the owner of the home), the contesting party's Fourth Amendment rights have not been violated, absent a reasonable expectation of privacy in the third party's home:  "The person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation."  *United States v. Salvucci*, 448 U.S. 83, 91 (1980).  The person has not necessarily been subject to a deprivation because "an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.'"  *Id.* at 91-92 (quoting *Rakas*, 439 U.S. at 140). Neither Fumo nor Arnao has any reasonable expectation of privacy in Luchko's home; therefore, neither has standing to assert that the October 19 warrant or the search and seizure authorized by it were unconstitutional.  Thus, evidence obtained pursuant to this warrant that might be used against Fumo or Arnao at trial will not be suppressed, and I will deny the motion as to them.

Second, I will deny the motion as to Luchko on the merits.  Luchko joins in Fumo's motion to suppress the October 19 warrant, but makes no additional arguments in support of the motion.  Fumo asserts that the October 19 warrant is deficient in four respects:  (1) it does not meet the constitutional standard of particularity because it does not name the specific crimes for

---

in *Rakas v. Illinois*, . . . indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law.'  *United States v. Sanchez*, 943 F.2d 110, 113 n.1 (1st Cir. 1991).").

*United States v. Mosley*, 454 F.3d 249, 253 n.5 (3d Cir. 2006).

which probable cause was established for a search for evidence; (2) it is a prohibited general

warrant; (3) it is overbroad; and (4) it was executed unreasonably.  His arguments in support of

these assertions are the same as his arguments in support of his identical assertions with respect

to the February 18 warrant.  For the reasons explained above with respect to Fumo's motion to

suppress evidence seized pursuant to the February 18 warrant, *see supra* Part II.A, I find no

reason to suppress evidence that might be used against Luchko at trial that was obtained pursuant

to the October 19 warrant.  Thus, I will deny the motion as to Luchko, as well.


    **C.**    **Warrant Issued on January 31, 2007 Authorizing Search of Previously
Seized and Obtained Computer Equipment**

On January 31, 2007, United States Magistrate Judge Charles B. Smith issued a warrant

authorizing a search all of the computer evidence previously obtained by grand jury subpoena,

the February 18 warrant, and the October 19 warrant for evidence pertaining to all the schemes

detailed in the indictment (the "January 31 warrant").  This warrant, based on a seventy-three

page affidavit by the same FBI special agent who swore the affidavit in support of the February

18 warrant, authorized seizure of the following:

> 1.    For the period January 1, 1998 through December 31, 2006, all
> computer files, records, documents, and e-mail, including computer databases and
> computerized financial records such as Quicken and QuickBooks, concerning or
> reflecting any work or services provided by any Senate of Pennsylvania employee or
> contractor in the following categories:
>
> > a.    Political campaign and political action committee related
> > activities, including fundraising, polling, gathering ballot petition signatures,
> > mailings, preparing campaign finance reports, payment of campaign
> > expenses, management of finances, planning, organizing, and attending
> > meetings or other events, and preparation and distribution of campaign
> > literature or print, television, and radio ads.

b.      Activities on behalf of Citizens Alliance for Better Neighborhoods, including furthering Citizens Alliance projects, ordering goods on its behalf, and handling its finances, including the payment of expenses.

c.      Handling of personal finances of Vincent J. Fumo, Ruth Arnao, and [Person No. 16], including catalog and online ordering of merchandise for their personal use and benefit, writing checks, maintaining records of personal, investment, and business accounts, and preparing reports and summaries of such accounts and other personal and business expenditures and activities.

d.      Surveillance or other activities of a private investigator regarding legislative, personal, or political matters, or similar activities of a Senate employee or contractor to obtain information for the personal or political use of Fumo.

e.      Driving Senator Fumo for any purpose other than for official Senate of Pennsylvania business including the following: to and from his residence in Philadelphia; to and from his vacation properties in New Jersey; to and from his farm in Halifax, Pennsylvania; to and from Martha's Vineyard; and to and from any other non-Senate meeting, dinner, or other event.

f.      Driving members of Senator Fumo's family and any of his personal friends or associates for purposes other than official Senate of Pennsylvania business.

g.      Handling personal errands for Fumo or members of his staff, or any of his friends and family members, including shopping, picking up and dropping up of dry cleaning, taking automobiles for service and maintenance, and delivery of merchandise purchased by Fumo for his personal use, and other possessions.

h.      Any work or services performed at any of Fumo's homes and vacation properties (in Philadelphia, Halifax, Pennsylvania, Margate, New Jersey, Ventnor, New Jersey, and in Florida), including, but not limited to, farm-related chores, housekeeping services, valet services, laundry services, food preparation, babysitting children, meeting with contractors and vendors, trash and snow removal, and overseeing and assisting in household renovation and maintenance.

i.      All assistance provided in the development, construction,

maintenance, and operation of Fumo's farm in Halifax, Pennsylvania.

j. All legal assistance provided to Fumo for his personal or political benefit, and to friends, family members, and associates of Fumo.

k. All computer assistance and training, and assistance and training with regard to the installation and operation of other electronic equipment, provided to Fumo for his personal or political benefit, and to friends, family members, and associates of Fumo.

l. Possession and usage of computers, Blackberry and other communication devices, including cell phones, other electronic equipment, and any other equipment owned or purchased by the Senate of Pennsylvania, and used by Fumo for non-Senate purposes or given to non-Senate employees for their use.

2. For the period January 1, 1998 through December 31, 2006, all computer files, records, documents, and e-mail regarding any work performed pursuant to a Senate contract, and any work performed for the benefit of Fumo or any associate of Fumo, by [Senate Contractors No. 1 through 5].

3. For the period January 1, 1996 through December 31, 1996, all computer files, records, documents, and e-mail concerning or relating to Fumo's acquisition or use of any property of the Independence Seaport Museum for his personal benefit, including the *Enticer*, the *Principia*, ship models, and funds.

4. Any phone and address lists regarding the identities of Senate employees, or friends, family members, or associates of Fumo, who were given cell phones or other communications equipment for which the Senate or Citizens Alliance paid.

Fumo argues that the January 31 warrant is deficient in three respects: (1) it does not meet the constitutional standard of particularity; (2) it is a prohibited general warrant; and (3) it is based on probable cause allegations arising from evidence obtained during searches pursuant to the February 18 and October 19 warrants that, Fumo maintains, violated the Fourth Amendment. The government again argues in response that the warrant, search, and seizure conformed to the Fourth Amendment's requirements.

23

As with respect to the February 18 and October 19 warrants, Fumo asserts that the January 31 warrant is unconstitutional—not sufficiently particular and a general warrant—because the magistrate judge who issued the warrant did not specify which offenses he found probable cause to believe Fumo had committed.  (Fumo's Mem. 5, 11.)  For the reasons specified above with respect to the February 18 warrant, *see supra* Part II.A, Fumo's arguments in support of these claims are unavailing.  Therefore, I will deny Fumo's motion with respect to his claim that the January 31 warrant is not sufficiently particular or is an unconstitutional general warrant.

Lastly, Fumo argues that the January 31 search warrant "was issued upon probable cause allegations—extensively set forth in the affidavit—which are dependent upon information constituting on their face the fruit of the violations which occurred with the first two warrants, especially the systematic exceeding of the proper scope of the 'plain view' doctrine."[9]  (Fumo's

---

[9] Fumo argues that the later, off-site search of the files on the computer equipment seized pursuant to the February 18 and October 19 warrants "does not produce evidence in 'plain view' that agents can then seize outside the scope of the warrant."  (Fumo's Mem. 10.)  I understand him to be asserting that evidence (namely, computer files) obtained from the computer equipment seized pursuant to the February 18 and October 19 warrants that was outside the scope of those warrants was seized because it was in plain view during the searches pursuant to those warrants.  Again, I have already concluded that "the government may legally open and briefly examine each file when searching a computer pursuant to a valid warrant," in order to determine which files are described by the warrant.  *See Fumo*, 2007 WL 3232112, at *6.  In searching the computer equipment for documents relating to Citizens Alliance and obstruction of justice, "agents and attorneys [saw] materials which plainly are evidence of additional criminal activity, i.e., the Senate fraud and the [Independence Seaport Museum] fraud."  (January 31 Warrant Affidavit 5.)  Although I am wary of warrants for searches of computers becoming blank checks for general rummaging through computers, I believe the government's actions in this case—opening files potentially relevant to the previously obtained search warrants, and then returning to the magistrate judge for a warrant to search specifically for evidence of the newly discovered crimes—were reasonable given both the state of the law and technology.  *See United States v. Hill*, 459 F.3d 966, 974 (9th Cir. 2006) (quoting *United States v. Hill*, 322 F. Supp. 2d 1081, 1088 (C.D. Cal. 2004)) (stating, in the context of a search of computers, that "[a]s always under the Fourth Amendment, the standard is reasonableness").

Mem. 12.)  Unless the magistrate judge who issued the February 18 search warrant was not neutral and detached (for Fumo's other arguments regarding the illegality of the warrant or its execution are meritless, *see supra* Part II.A), the evidence seized pursuant to the February 18 and October 19 warrants was legally obtained and cannot form the basis of a "fruit of the poisonous tree" claim.  Given that Fumo's claim that the magistrate judge who issued the February 18 warrant was not neutral and detached remains pending a hearing, I will withhold resolution of this claim.[10]

### III.   Conclusion

For the reasons stated above, I will deny the motion for suppression of evidence as to the claims that the warrants issued on February 18, 2005; October 19, 2005; and January 31, 2007 were not sufficiently particular, were general warrants, were overbroad, or were executed unreasonably.  As to these claims, Fumo cannot meet his burden of establishing that his Fourth Amendment rights were violated.  I will schedule a hearing on the remaining issue, whether the magistrate judge who issued the February 18, 2005 warrant was neutral and detached.

---

[10] I note, however, that even if the February 18 warrant was constitutionally infirm, the evidence seized pursuant to the January 31 warrant is not necessarily subject to suppression.  *See United States v. Reilly*, 76 F.3d 1271, 1280-81 (2d Cir. 1996) ("[W]e do not hold that the fruit of [warrantless] illegal searches can never be the basis for a search warrant that the police can subsequently use in good faith."); *cf., e.g.*, *United States v. McClain*, 444 F.3d 556, 565-66 (6th Cir. 2005) (declining to suppress evidence obtained in good faith reliance on a search warrant, where the warrant was issued based on evidence discovered during a prior warrantless search that was subsequently held to be unconstitutional); *United States v. Thomas*, 757 F.2d 1359, 1368 (2d Cir. 1985) (declining to suppress evidence obtained in good faith reliance on a search warrant, where the warrant was obtained in part on the basis of evidence resulting from a canine sniff later held to be an unconstitutional search).  Where "[t]here is nothing more the officer could have or should have done under the[] circumstances to be sure his search would be legal," *Thomas*, 757 F.2d at 1368, the deterrent purpose of the exclusionary rule is not furthered by suppression.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-319 |
| VINCENT J. FUMO et al., | : | |
| Defendants. | : | |
| | : | |

## Order

**AND NOW**, this ____ day of June 2008, upon careful consideration of Vincent J. Fumo's motion for suppression of evidence (Doc. No. 187), the motions of Ruth Arnao and Leonard Luchko to join in Fumo's motion, the government's response to each of the aforementioned motions, and Fumo's reply, **IT IS HEREBY ORDERED** that Fumo's motion for suppression of evidence is **DENIED** as to the claims that the warrants issued on February 18, 2005; October 19, 2005; and January 31, 2007 were not sufficiently particular, were general warrants, were overbroad, or were executed unreasonably.

**IT IS FURTHER ORDERED** that a hearing on the issue whether the magistrate judge who issued the February 18, 2005 warrant was neutral and detached is **SCHEDULED** for **July 1, 2008 at 9:30 a.m. in Courtroom 14-B**.


_____
         s/ William H. Yohn
         William H. Yohn Jr., Judge